Filed 7/16/12

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
Plaintiff and Respondent, )
) S187804
v. )
) Ct.App. 2/8 B218863
PAUL DEAN RUNYAN, )
) Los Angeles County
Defendant and Appellant. ) Super. Ct. No. BA322080
_____ )

Defendant, driving while intoxicated, killed another driver instantly in a freeway collision. The accident victim left no surviving family, dependents, or heirs. Defendant was convicted and sentenced to prison. In addition, pursuant to the statute requiring that persons convicted of felonies pay restitution to the crimes' victims for their resulting economic loss, he was also ordered to pay substantial restitutionary amounts to the decedent's estate. The award represented death-related loss in value of the decedent's business and property, and probate, estate administration, and funeral expenses. The Court of Appeal affirmed the award.

We granted review to decide if, when, and to whom one convicted of a felony is required by the Constitution and statutes to pay restitution to the estate or personal representative of a victim of the crime who has died. As an initial matter, we agree with defendant that, for purposes of the mandatory restitution provisions, the estate is not itself a "direct victim" of a crime that caused the decedent's death. Thus, mandatory restitution is not payable to the estate for economic loss the

1

estate itself has sustained as a result of the death. But even if the estate is not a "direct victim," the decedent's personal representative (i.e., the executor or administrator of the decedent's estate) is entitled to collect mandatory restitution, on the *decedent*'s behalf, for economic loss the *decedent* personally incurred *before death* as an actual victim of the defendant's criminal conduct. Nothing in the mandatory restitution statute suggests otherwise. And recent amendments to the "Victims' Bill of Rights," as set forth in article I, section 28 of the California Constitution, make clear that a decedent's personal representative, acting in that capacity, can receive restitution to which the decedent was entitled for losses he or she personally sustained prior to death as a victim of the defendant's crimes.

However, we further determine that, *after* the actual victim has died, he or she does not incur, or continue to incur, personal economic loss subject to mandatory restitution. Thus, post-death diminution in the value of the decedent's property, and the expenses of administering the decedent's estate, are not recoverable by the decedent's representative, on the decedent's behalf, as losses the decedent personally incurred because of the defendant's crime. Our determination is consistent with well-established principles of the law of civil damages, and we discern no purpose of the statutory or constitutional provisions governing mandatory restitution to depart fundamentally from these principles.

No portion of the mandatory restitution award upheld by the Court of Appeal in this case represents an economic loss incurred either by (1) the decedent personally, prior to his death, as a result of the defendant's crime, or (2) the decedent's estate itself as a "direct victim" of a crime committed by the defendant. Accordingly, there is no valid basis for any of the mandatory restitution amounts awarded to the estate. We will therefore reverse the Court of Appeal's judgment in its entirety.

## FACTS AND PROCEDURAL BACKGROUND

After a jury trial, defendant Paul Dean Runyan was acquitted of murder, but was convicted of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)),[1] causing injury while driving under the influence of a drug or alcohol (Veh. Code, § 23153, subd. (a)), and causing injury while driving with a blood-alcohol level of .08 percent or greater (*id.*, subd. (b)).  The evidence indicated that on April 6, 2007, defendant, while intoxicated, drove the wrong way on a freeway for more than three miles before colliding head-on with a vehicle driven by Donald Benge.  Benge had been traveling directly behind a California Highway Patrol vehicle, which swerved to avoid defendant's car.  Benge was pronounced dead at the scene.  He left no family, dependents, or heirs.

Defendant was sentenced to six years in state prison.  Thereafter, a restitution hearing took place on August 5, 2009.  Pursuant to the mandatory restitution statute, section 1202.4, the court found that "the economic loss suffered as a result of the defendant's criminal actions" totaled $446,486, and it ordered defendant to pay restitution in this amount to Benge's estate.  The award was allocated as follows:  $229,721 in net loss to Benge's rare coin collection; $9,764 for net loss in value of Benge's fencing equipment; $17,211 for net loss in value of the contents of Benge's residence; $148,645 in probate costs; $36,000 and $5,100, respectively, as compensation or reimbursement to two individuals for their assistance to the estate; and $45 for funeral expenses.[2]

---

[1]     All further unlabeled statutory references are to the Penal Code.
[2]     The net loss on the rare coin collection, $229,721, was computed by positing the wholesale appraised value of the coin inventory ($863,934), adding a 20 percent retail markup ($1,036,721), then subtracting from the latter figure the actual price obtained for the coin inventory after Benge's death ($807,000).  The net loss attributable to Benge's fencing equipment, $9,764, was similarly computed by positing the supposed retail value of this equipment ($12,264), then

*(Footnote continued on next page.)*

The trial court rejected defendant's contention that, in light of Benge's death, there was no "victim" statutorily entitled to restitution. In the court's view, the Legislature cannot have intended a crime victim's death to absolve the defendant of restitutionary liability. Moreover, the court noted that the Constitution now defines a "victim" for restitutionary purposes to include the lawful representative of a deceased crime victim.

Defendant appealed the restitution order. He argued, as below, that Benge's estate may only obtain mandatory restitution under section 1202.4 if it is a "direct victim" of defendant's crime, that the estate is not such a "direct victim," and that, because Benge died without family, heirs, or dependents, there is no other identifiable "victim" entitled to restitution.

The Court of Appeal affirmed the order, reasoning that Benge's estate must be deemed a "direct victim," because it only exists as a result of defendant's criminal acts. Noting that section 1202.4 defines "victim[s]" entitled to restitution to include members of the actual victim's immediate family, the Court of Appeal deemed this a clear indication that the Legislature did not intend a defendant's restitutionary obligation to terminate with the victim's death. The Court of Appeal cited *People v. Slattery* (2008) 167 Cal.App.4th 1091 (*Slattery*) for the principle that restitution is payable to the estate of a deceased victim. Finally, the Court of Appeal stressed that defendant would have been liable for restitution had he

_____

*(Footnote continued from previous page.)*

subtracting the actual post-death sale price ($2,500). The net loss on certain residential contents, $17,211, was derived by subtracting the actual post-death sale price ($5,560) from the appraisal value of these items ($22,771). Restitution for probate expenses ($148,645) was sought on grounds that these costs could have been avoided if Benge had created and maintained an inter vivos revocable trust, as he had planned.

4

severely injured Benge, rather than killing him.  The Legislature, the Court of Appeal insisted, cannot have intended to provide greater restitutionary protection to a victim who lived than to one who died.

We granted review.  For the reasons we explain below, we conclude that the Court of Appeal's judgment must be reversed.

## DISCUSSION

Section 1202.4 declares "the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime."  (*Id.*, subd. (a)(1).)  Accordingly, with specified exceptions, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims . . . ."  (*Id.*, subd. (f).)  Absent extraordinary and compelling reasons (*ibid.*), restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct" (*id.*, subd. (f)(3)), and must include, but is not limited to, such costs as the value of stolen or damaged property, as determined by repair or replacement value (*id.*, subd. (f)(3)(A)), medical expenses (*id.*, subd. (f)(3)(B)), and "[w]ages or profits lost due to injury incurred by the victim" (*id.*, subd. (f)(3)(D)).

For purposes of section 1202.4, a "victim" is defined to include, among others, the actual victim's immediate surviving family (*id.*, subd. (k)(1)), as well as specified relatives of the actual victim, and present and certain former members of the victim's household, who sustained economic loss as a result of the crime (*id.*, subd. (k)(3)(A)-(D)).  A "victim" also includes "[a]ny corporation, business trust, *estate*, trust, partnership, association, joint venture, government,

5

governmental subdivision, agency, or instrumentality, or any other legal or commercial entity *when that entity is a direct victim of a crime*." (*Id.*, subd. (k)(2), italics added.)

The case law has ascribed a precise meaning to the phrase "direct victim," as that phrase has appeared in several restitution statutes. Thus, it is established that a statute "permitting restitution to entities that are 'direct' victims of crime [limits] restitution to 'entities *against which* the [defendant's] crimes had been committed' — that is, entities that are the 'immediate objects of the [defendant's] offenses.' [Citation.]" (*People v. Martinez* (2005) 36 Cal.4th 384, 393 (*Martinez*), quoting *People v. Birkett* (1999) 21 Cal.4th 226, 232-233 (*Birkett*) [construing former § 1203.04].)

In *Martinez*, we held that the Department of Toxic Substance Control was not the "immediate object" of the defendant's offense in that case —attempted manufacture of methamphetamine, a controlled substance — (Health & Saf. Code, § 11379.6, subd. (a)) — and thus was not a "direct" victim entitled to restitution under section 1202.4 for its mandatory costs of cleaning up the defendant's illegal drug laboratory. (*Martinez*, *supra*, 36 Cal.4th 384, 393-394.) And in *Birkett*, we concluded that automobile insurers were not entities against which the defendant's vehicle theft and "chop shop" crimes were committed, and thus were not "direct" victims entitled to restitution, under similar language in former section 1203.04, for amounts the insurers paid to reimburse their policyholders for their losses. (*Birkett*, *supra*, 21 Cal.4th 226, 229.)

Similarly here, Benge's estate is not a "direct victim" of the fatal collision that killed Benge. As defendant observes, the estate is not an entity against which defendant committed his alcohol-related offenses of vehicular homicide and injurious driving, and it was not the immediate object of those offenses. Indeed, as defendant further points out, the estate did not even exist at the time the crimes

6

were committed; it came into being only as a result of those offenses. Hence, the estate is not entitled to restitution, on its own behalf, as an entity itself directly targeted and victimized by defendant's crimes.

Nonetheless, we are persuaded that a deceased victim's estate may, in appropriate cases, receive restitution in a different capacity, and for a different reason. When the actual victim of a crime has died, the estate, acting in the decedent's stead, steps into the decedent's shoes to collect restitution owed *to the decedent*, but which the decedent cannot personally receive because of his or her death. Thus, a decedent's estate — or, more precisely, its executor or administrator as the decedent's personal representative — is a proper recipient, on the decedent's behalf, of restitution owed *to the decedent*, as an actual and immediate crime victim, for economic losses the decedent incurred as a result of the defendant's offenses against the decedent.

In reaching this conclusion, we look first to the language of section 1202.4 itself. As noted, this statute expresses the Legislature's intent that "a victim of crime who incurs any economic loss" because of the defendant's crime "shall receive restitution" from the defendant (*id.*, subd. (a)(1)), and requires, with exceptions irrelevant here, that the court order restitution "to the victim or victims" "in *every case* in which a victim has suffered economic loss as a result of the defendant's conduct" (*id.*, subd. (f), italics added). Nothing in this language remotely suggests that the defendant is absolved of responsibility to pay restitution for the economic loss his or her victim personally incurred as a result of the crime, if the victim has died.

Other provisions of law make clear that a debt owed to a decedent is properly payable to the decedent's personal representative. The personal representative has the statutory right and duty to collect all obligations owed to the decedent personally (Prob. Code, § 9650, subd. (a)(1)), and to maintain actions to

7

recover such amounts (Code Civ. Proc., §§ 377.20, 377.30 et seq.). Section 1202.4 contains no indication that the personal representative lacks authority to collect a restitutionary debt the defendant owes to a deceased crime victim for the decedent's personal economic loss incurred as a result of the crime.

Courts have assumed that restitution for loss personally incurred by a crime victim who has died should be paid to the victim's estate. Thus, in *Slattery*, *supra*, 167 Cal.App.4th 1091, the defendant's abuse of her elderly mother resulted in the mother's admission to the hospital. She died there 10 days later, leaving unpaid medical bills. The trial court sentenced the defendant to prison and, pursuant to section 1202.4, ordered her to pay restitution to the hospital that treated the victim. The Court of Appeal struck this award, holding that the hospital was not a "direct victim" of the defendant's criminal conduct. In order to make the deceased victim "whole" for her loss, as section 1202.4 requires, the Court of Appeal held that an award for her medical expenses should be paid to her estate, after which the hospital could sue the estate for the unpaid bill. (*Slattery*, *supra*, at p. 1097.)

We indicated apparent approval of *Slattery* in *People v. Anderson* (2010) 50 Cal.4th 19. There, the defendant was placed on probation after his conviction for a fatal hit-and-run. Under section 1203.1, the probationary restitution statute, the court ordered him to pay restitution to the hospital who treated the victim. The defendant challenged this award, citing *Slattery*. We affirmed. Because section 1202.4 limits mandatory restitution to commercial entities that are "direct" crime victims, we endorsed *Slattery*'s conclusion, under that statute, calling for payment of the deceased victim's medical expenses to the victim's estate rather than to the treating hospital. However, we concluded that *Slattery* is not dispositive of a court's broader discretionary authority under section 1203.1 to order a probationer to pay restitution even to persons and entities who are not "direct" victims. (*Anderson*, *supra*, at p. 31.)

8

Finally, as the People point out, even if section 1202.4 left doubt about whether a deceased crime victim's personal representative may receive restitution owed to the victim, recent constitutional amendments conclusively resolve the issue. In November 2008, the voters adopted Proposition 9, popularly known as Marsy's Law. Proposition 9 substantially amended article I, section 28, of the California Constitution, the "Victims' Bill of Rights." These amendments make clear that a crime "victim" is entitled, among other things, "[t]o restitution" (Cal. Const., art. I, 28, subd. (b)(13)); define a "victim," for all purposes of article I, section 28, to include "a lawful representative of a crime victim who is deceased" (*id.*, subd. (e)); and provide that "a lawful representative of the victim" may enforce the victim's rights (*id.*, subd. (c)(1)).[3]

Defendant's proposed rule — that a person's death eliminates the person as a crime "victim" entitled to restitution — would produce manifest injustice the Legislature cannot have intended. It would mean, for example, that a defendant would owe no restitution for crime-related losses incurred by a victim who died,

---

[3] In his reply brief, defendant argues that Marsy's Law is inapplicable to the issues in this case, because it only addresses "enforcement" of restitution awards, not who is entitled to receive the restitution itself. The distinction escapes us. By providing that a "victim" includes the lawful representative of a *deceased* victim, Marsy's Law obviously means that such a representative may enforce a restitutionary obligation owed to a victim who has died. (Cal. Const., art. I, § 28, subd. (e).)

Defendant also urges that because the People have invoked Marsy's Law for the first time in this court, their argument is untimely. But we may consider new arguments that present pure questions of law on undisputed facts. (E.g., *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 654, fn. 2; *Frink v. Prod* (1982) 31 Cal.3d 166, 170; *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1141.) Nor would we ignore a constitutional provision directly applicable to an issue in a case before us simply because a party had neglected to cite it. No unfairness thereby accrues to defendant; he has had a full opportunity, in his reply brief, to argue the relevance of Marsy's Law.

9

well after the crime but before the defendant's conviction, for reasons entirely unrelated to the defendant's offense. Obviously, in such a case, the deceased victim's personal representative would be the proper recipient of restitution owed to the deceased victim for the economic loss the victim had incurred as a result of the defendant's crime.

We therefore conclude that when a crime victim has died, restitution owed to that person for the "economic loss" he or she has personally incurred "as a result of the commission of [the] crime" (§ 1202.4, subd. (a)(1)) is properly payable to the decedent's estate.

This conclusion, however, leaves a question of equal importance and greater difficulty: What *are* the "economic loss[es]" personally incurred by a victim of crime as a result of the defendant's criminal conduct? Specifically, can such personal losses accrue, or continue to accrue, *after* the crime victim has died? We turn to that issue.

At the outset, we conclude that, under the terms of both Marsy's Law and section 1202.4, a crime victim may recover only for losses *personally incurred by that victim*. Thus, section 1202.4 expresses the Legislature's intent that a "*victim of crime who incurs . . . economic loss*" as a result of the defendant's criminal conduct "shall receive restitution" (*id.*, subd. (a)(1), italics added) and provides that the court shall order the defendant to "make restitution *to the victim or victims* based on the amount of loss claimed by *the victim or victims*" (*id.*, subd. (f)), italics added). The restitution order must "identify each victim and each loss to which it pertains," and must provide "a dollar amount [of restitution] sufficient to fully *reimburse* the victim or victims" for their economic losses. (*Id.*, subd. (f)(3), italics added.)

The statute then defines and limits the categories of "victim[s]" that are entitled to recover for the losses *they* have accrued. These include, in addition to

10

an "actual" (*id.*, subd. (k)(1)) or "direct" (*id.*, subd. (k)(2)) victim, the immediate surviving family of an actual victim (*id.*, subd. (k)(1)); certain other persons who sustained economic loss as a result of the crime, including a parent, grandparent, spouse, child, or grandchild of the victim (*id.*, subd. (k)(3)(A)), a present member, and certain former members, of the victim's household (*id.*, subd, (k)(3)(B), (C)), another family member who witnessed the crime (*id.*, subd. (k)(3)(D)), and the primary caretaker of a minor victim (*id.*, subd. (k)(3)(E)); any person eligible to receive assistance from the Restitution Fund (*id.*, subd. (k)(4)); and government entities that incur graffiti cleanup costs as the result of certain offenses (*id.*, subd. (k)(5)).

Similarly, article I, section 28 of the California Constitution, as amended by Marsy's Law, provides that a "victim" is entitled to "restitution" (*id.*, subd. (b)(13)), specifies that a "victim" is "*a person* who suffers direct or threatened physical, psychological, or financial harm as a result of . . . a crime" (*id.*, subd. (e), italics added), and additionally defines a victim to include "the person's spouse, parents, children, siblings, or guardian, and includes a lawful representative of a crime victim who is deceased, a minor, or physically or psychologically incapacitated" (*ibid.*, italics added).  Here again, the implication is that a defined victim, and only a defined victim, is entitled to restitution on *his or her own personal behalf*, or on the personal behalf of the deceased, minor, or incapacitated victim he or she lawfully represents.

Indeed, we have confirmed that section 1202.4 and the Victims' Bill of Rights allow each defined victim to seek and obtain restitution only for that person's or entity's own personally incurred loss.  In *People v. Giordano* (2007) 42 Cal.4th 644 (*Giordano*), the defendant was convicted of vehicular manslaughter after his intoxicated driving caused the death of a motorcyclist.  The trial court awarded the decedent's spouse, Patricia Armstrong, restitution of

11

$167,711.65, computed as the decedent's average annual earnings for the most recent three years before his death, multiplied by five.  The Court of Appeal upheld the award, and we affirmed the Court of Appeal.

On appeal in *Giordano*, the defendant urged that the constitutional and statutory provisions governing mandatory restitution did not allow Armstrong to recover *her deceased husband*'s future earnings.  We agreed that "Armstrong does not step into the shoes of decedent to recover *his* future losses.  The language of [former] article I, section 28, subdivision (b) of the California Constitution, itself suggests that victims may recover restitution only for those losses suffered personally. . . ." (*Giordino*, *supra*, 42 Cal.4th 644, 657, italics added.)[4] Moreover, we noted that section 1202.4 does not allow a surviving spouse, or other family member or heir, to recover losses on behalf of a deceased victim, but "provides only that a victim may recover economic losses that he or she incurred personally:  'a victim of crime *who incurs* any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime.'  (*Id.*, subd. (a), italics added.)" (*Giordano*, *supra*, at p. 657.)  However, we concluded that Armstrong, the victim's spouse, *was herself* a statutorily specified victim, and could therefore obtain restitution — just as she could recover in a civil action for wrongful death — for *her own personal loss* arising from the decedent's death, i.e., *the deprivation of support* that she otherwise had a right to expect from her spouse. (*Id.*, at pp. 657-662.)  We further

_____

[4]     At the time *Giordano* was decided in 2007, article I, section 28 provided in pertinent part that "all *persons who suffer losses* as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes *for losses they suffer*." (*Id.*, former subd. (b), italics added; *Giordino*, *supra*, 42 Cal.4th 657 [quoting].)  The subsequent amendments made by Marsy's Law, as quoted in the text above, do not indicate any purpose to expand the right to restitution beyond personally incurred loss.

12

determined that the amount of restitution awarded to Armstrong personally on this basis was not an abuse of discretion. (*Id.*, at pp. 662-667; also cf., *People v. Rubics* (2006) 136 Cal.App.4th 452 [defendant convicted of fatal hit-and-run properly ordered to pay restitution *to victim's family* for funeral expenses].)

As we have explained above, a decedent's personal representative may step into the decedent's shoes to recover, on the decedent's behalf, losses the decedent personally suffered as a victim of the defendant's criminal conduct. Nonetheless, it follows from the pertinent statutory and constitutional language, as analyzed in *Giordano*, that a victim, and thus a personal representative acting in his or her behalf, may not recover for losses *other than* those the victim *personally* incurred.

Here, the sole victim of defendant's crime, on whose behalf restitution was ordered, was killed, more or less instantaneously, by defendant's criminal conduct. We therefore must consider what forms of restitutionary loss, if any, a victim can personally incur *after his or her death*.

In the analogous field of civil law, the answer is clear. No civil claim can be asserted, on a decedent's personal behalf, for injury or damage to the decedent that occurs, or accrues, after the decedent has died. The governing statutes recognize two, and only two, mutually exclusive types of actions that may be brought, or maintained, in consequence of a person's death. First, a cause of action in favor of a person survives the person's death, and may be commenced, or continued, by the decedent's personal representative, or, if none, by the decedent's successor in interest. (Code Civ. Proc.,§§ 377.20, subd. (a), 377.30, 377.31.) However, the damages recoverable in such an action "are limited to the loss or damage that the decedent sustained or incurred *before death* . . . ." (*Id.*, § 377.34, italics added.)

Second, specified persons who survive the decedent, or the decedent's personal representative acting in *their* behalf, may sue for a person's wrongful

13

death.  (Code Civ. Proc., § 377.60.)**5**  In such an action, "just" damages may be awarded, but such an award "may not include damages recoverable under [Code of Civil Procedure] [s]ection 377.34."  (*Id.*, § 377.61.)  "The purpose of the statute establishing standing for certain persons to bring wrongful death actions . . . 'is to enable the heirs and certain specified dependents of a person wrongfully killed to recover compensation for the economic loss *they suffer* as a result of the death.' [Citation.]"  (*Giordano*, *supra*, 42 Cal.4th 644, 658, quoting *Justus v. Atkinson* (1977) 19 Cal.3d 564, 581, italics added, italics in *Giordano* omitted.)

*Estate of Bright v. Western Air Lines* (1951) 104 Cal.App.2d 827 (*Estate of Bright*) illustrates the relevant limitations and distinctions in circumstances similar to those we confront here.  There, the decedent, a passenger on the defendant's airliner, was killed when the plane crashed.  An action was brought, in the name of the decedent's estate, to recover for waste, loss, and injury to the property and assets of the estate as a result of the defendant's negligence.  Based on the decedent's life expectancy of 34.29 years, and his annual income of $300,000 over the several years preceding his death, the complaint alleged estate damages of $10,287,000.  The trial court sustained the defendant's demurrer without leave to amend, and the Court of Appeal affirmed.

---

**5**    Under current law, these include the decedent's surviving spouse, domestic partner, children, and issue of deceased children, or if the decedent died without surviving issue, the persons who would take by intestate succession (Code Civ. Proc., § 377.60, subd. (a)); the decedent's stepchildren, parents, putative spouse, and the children of the putative spouse, if they were dependents of the decedent (*id.*, subd. (b)); and a minor dependent of the decedent who resided in the decedent's household for the 180 days before the decedent's death (*id.*, subd. (c)).

On appeal in *Estate of Bright*, the contention was that the action was authorized by former section 574 of the Probate Code,[6] which gave a decedent's executor or administrator the right to sue for waste, destruction, or conversion of the decedent's property during his or her lifetime.  The Court of Appeal explained, however, that actions for death are purely statutory, that the statutes recognize no loss to a decedent's estate, as such, resulting from the death, and that the action authorized by former section 574 was solely for the benefit of the decedent's heirs, vindicating their rights to personal compensation for the pecuniary loss *to them* resulting from the decedent's wrongful death.  Because the complaint failed to allege that the decedent left heirs at law, the Court of Appeal held, it did not state a cause of action.  (*Estate of Bright*, *supra*, 104 Cal.App.2d 827, 829-830.)[7]

---

[6]     Probate Code former section 574 was repealed in 1961.  (Stats. 1961, ch. 657, § 3, p. 1868.)

[7]     We are both puzzled, and unpersuaded, by arguably contrary remarks in a later case, *Pease v. Beech Aircraft Corp.* (1972) 38 Cal.App.3d 450 (*Pease*). There, the pilot and three passengers died when a Beechcraft Baron airplane crashed during takeoff.  The decedents' heirs sued the aircraft's manufacturer for wrongful death.  The suits also sought punitive damages under the "survival action" provisions of former section 573 of the Probate Code, the predecessor of current Code of Civil Procedure sections 377.20, 377.30, and 377.34.  The former Probate Code section, like the current Code of Civil Procedure sections, provided in substance that a cause of action held by a person during life survived the person's death and could be maintained by the decedent's personal representative, but that damages, including punitive damages, were limited to those the decedent incurred, or to which he or she would have been entitled, prior to death.  The plaintiffs in *Pease* urged that Probate Code former section 573 would allow punitive damages because personal effects of the decedents were destroyed in the crash, and the decedents' causes of action for these property losses survived their deaths.

The Court of Appeal disagreed.  It pointed out that under Probate Code former section 573, punitive damages in "survival actions" were limited to those incurred by the decedent before his or her death.  Because the parties had

*(Footnote continued on next page.)*

15

We see no indication that the constitutional and statutory provisions governing mandatory restitution were intended to expand upon these principles. In fact, all evidence is to the contrary. Section 1202.4 limits eligibility for mandatory restitution to carefully defined crime "victims" (*id.*, subd. (k)); makes clear that those eligible — expressly including decedent's estates — must be the crime's "direct" or "actual" victims except for enumerated categories of individuals who had close familial or economically dependent relationships to an actual victim (*ibid.*); provides that such victims are to receive restitution "directly" from a convicted defendant (§ 1202.4, subd. (a)(1)); restricts restitution to a victim's "economic loss" (*id.*, subd. (f)); and calls for restitution sufficient to "reimburse" each identified victim for such loss (*id.*, subd. (f)(3)). No language in

---

*(Footnote continued from previous page.)*

stipulated the decedents' deaths were simultaneous with the crash, the Court of Appeal concluded, "it must be said no cause of action arose during the lifetime of any of the four for damage to personal property. Therefore, no such cause of action survived." (*Pease*, *supra*, 38 Cal.App.3d 450, 459-460.)

However, the Court of Appeal then inserted the following footnote: "For the benefit of [those] so error-prone as to find in the foregoing a view that the personal representative of a decedent would have no cause of action for damage to tangible property suffered simultaneously with the death of its owner, we make it clear that the personal representative would have a cause of action whether the damage occurred before, at the same time as, or after the death of the owner; and if it occurred after and was caused by a direct invasion of the right of the personal representative to possession and control of the property free from damage or interference, there might be a right to punitive damages, as in a cause of action arising during the life of the decedent to which the personal representative succeeds. [¶] Such a right properly should be asserted in an action, or in a separate cause of action, distinct from a cause of action for wrongful death, and should result in a separate verdict from one awarding damages for wrongful death." (*Pease*, *supra*, 38 Cal.App.3d 450, 460, fn. 1.) The Court of Appeal did not mention or discuss *Estate of Bright*, and it cited no authority for the quoted proposition. Despite a diligent search, we have found none.

16

this scheme states or implies that, contrary to the assumption in civil law, an individual victim personally continues to incur "economic loss" after death, for which he or she may be "directly" "reimburse[d]."

Moreover, although section 1202.4 lists "[f]ull or partial payment for the value of *stolen or damaged* property" as a reimbursable loss (*id.*, subd. (f)(3)(A), italics added), nowhere does it suggest that the decedent's *estate or personal representative* may recover for damage or diminution in value of *estate assets* (i.e., property owned by the decedent in life), or for expenses of administering the estate, which arise, after the decedent's death, as a result of the crime *against the decedent personally*. Especially is this true when, as here, the actual victim had no family, dependents, or intestate heirs, and his personal representative thus cannot purport to be acting on behalf of surviving victims who are themselves entitled to restitution, in their own rights, for their own economic losses. In such circumstances, amounts awarded to the estate for diminution in estate asset value, and for burial, probate, and estate administration costs, are clearly received in the estate's capacity as a mere *indirect* victim of the defendant's crime, to which a right of mandatory restitution does not extend under section 1202.4. (*Id.*, subd. (k)(2); *Martinez*, *supra*, 36 Cal.4th 384, 393-394; see *Birkett*, *supra*, 21 Cal.4th 226, 243.)

Examination of the Victims' Bill of Rights, as amended by Marsy's Law, does not alter our conclusion. This provision defines " 'victim[s]' " entitled to restitution as (1) "person[s] who suffer[ ] *direct or threatened* physical, psychological, or financial harm" as a result of the defendant's crime, (2) close family members or guardians of such persons, and (3) the "lawful *representative*[*s*] of . . . crime victim[s] who [are] deceased, . . . minor[s], or physically or psychologically incapacitated." (Cal. Const., art. I, § 28, subd. (e), italics added.) A deceased victim's "lawful representative" is thus expressly

17

authorized, as in a civil "survival" action, to seek and receive, after the decedent's death, *and in that representative capacity*, compensation for losses the decedent personally incurred *in life* as a result of the defendant's wrongful conduct. However, nothing in Marsy's Law indicates, in contrast to the statutes governing civil death actions, that *upon or after death*, a crime victim either begins, or continues, to accrue a personal right to restitution, payable to his or her "lawful representative." Nor does it suggest that when the defendant has wrongfully killed the actual victim, the decedent's "lawful representative" (*ibid.*) becomes eligible to receive restitution, as a victim in its own right, for estate expenses, or for diminution of estate value. Such amounts, we conclude, are not authorized components of restitution under section 1202.4 and article I, section 28 of the California Constitution.

We realize the requirement that a convicted criminal defendant pay restitution for the losses caused by his crime has aims beyond strict compensation that include deterrence and rehabilitation. (E.g., *People v. Dehle* (2008) 166 Cal.App.4th 1380, 1386; *People v. Bernal* (2002) 101 Cal.App.4th 155, 162.) Accordingly, the decisions have suggested that the right to restitution, and the categories of covered "victims," are to be broadly and liberally construed. (See, e.g., *People v. Crow* (1993) 6 Cal.4th 952, 957 [government agency was "direct victim" of welfare fraud committed against it]; *People v. Phu* (2009) 179 Cal.App.4th 280, 283 [electric utility was "victim" of criminal marijuana grow operation that employed electric power stolen from utility; method of calculating value of stolen power was not abuse of discretion]; *People v. Saint-Amans* (2005) 131 Cal.App.4th 1076, 1084 [defendant was convicted of commercial burglary for entering bank premises to complete fraudulent transfers from innocent depositor's account; bank was "victim" of burglary entitled to restitution for amounts it reimbursed to depositor even though federal insurance

18

also covered the loss]; *People v. Mearns* (2002) 97 Cal.App.4th 493, 499, 501-502 [for victim forcibly raped in her mobile home, restitution order properly included relocation costs measured by difference between purchase price of new trailer and sale price of old trailer]; *People v. Ortiz* (1997) 53 Cal.App.4th 791, 796-797 [trade association formed by individual Latin American music labels to combat record piracy against them could be "direct victim" as their representative to recover restitution in form of profits lost to defendant's tape counterfeiting crimes].)

But the primary purpose of mandatory restitution, as of civil damage recovery, is reimbursement for the economic loss and disruption caused to a crime victim by the defendant's criminal conduct. (E.g., *Giordano*, *supra*, 42 Cal.4th 644, 658; *People v. Busser* (2010) 186 Cal.App.4th 1503, 1510; *People v. Jennings* (2005) 128 Cal.App.4th 42, 57.) We have discerned no constitutional or statutory provisions suggesting, contrary to the principles applicable in civil law, that a person against whom a crime was committed, or the estate of a victim wrongfully killed as the result of criminal conduct, is a direct and continuing crime "victim" entitled to restitution for economic losses that accrue *after the victim has died*.[8]

---

[8]    We are aware that under the federal Mandatory Victim Restitution Act (MVRA; 18 U.S.C.§ 3663A), one federal court of appeals has upheld an award of *future lost income* to the estate of a three-month-old infant against whom the defendant was convicted of committing voluntary manslaughter in Indian Country. (*U.S. v. Serawop* (10th Cir. 2007) 505 F.3d 1112.) The MVRA requires restitution for victims of certain offenses, including crimes of violence (18 U.S.C. § 3663A(a)(1), (c)(1)(A)(i)); defines a "victim" as a "person directly and proximately harmed as the result of the commission of an offense" subject to mandatory restitution (18 U.S.C. § 3663A(a)(2)); indicates that when "a victim . . . is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate" or other suitable

*(Footnote continued on next page.)*

We are mindful of the concern, expressed by both the trial court and the Court of Appeal, that denial of restitution to a deceased victim's estate under the circumstances presented here produces a perverse result the Legislature cannot have intended —i.e., that a criminal defendant may minimize his or her restitutionary obligation by instantly killing a victim, rather than by causing mere nonfatal injury. But a rule against post-death restitution on a deceased victim's personal behalf is consistent with the rule of damages that has applied by statute for more than 60 years in analogous civil cases of wrongful death. (See discussion, *ante*; see also *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 297-298.) In turn, the modern civil rule, under which a deceased victim's *pre-death* economic damages are recoverable, is an amelioration of the common law principle that an injured person's death entirely abated any cause of action he or she had for a personal tort. (*Sullivan*, *supra*, at p. 293.)

In most cases, of course, a criminal defendant will not escape restitution by killing his or her victim outright; the Constitution and statutes make clear that, as

---

*(Footnote continued from previous page.)*

person "may assume the victim's rights under this section" (*ibid.*); provides, inter alia, that the defendant shall "reimburse the victim for income lost by such victim as a result of such offense" (18 U.S.C. § 3663A(b)(2)(C)); and specifically declares that "in the case of an offense resulting in bodily injury that results in the death of the victim, [the defendant shall] pay an amount equal to the cost of necessary funeral and related services" (18 U.S.C. § 3663A(b)(3)). The *Serawop* court rejected arguments that the MVRA makes the expense of "necessary funeral and related services" the exclusive form of restitutionary recovery on behalf of a victim killed by the defendant; that the MVRA's provision for reimbursement of lost income implies a limitation to *past* lost income; and that the award of future lost income was speculative. (*Serawop*, *supra*, at pp. 1119-1121, 1123-1125.) *Serawop* had no occasion to analyze a mandatory restitution statute against the backdrop of analogous provisions of civil law which, as in California, limit tort recovery on the personal behalf of a decedent to predeath damages.

20

in civil law, numerous persons with familial and dependent attachments to the victims may seek restitution in their own rights for their own resulting losses. (Cf., e.g., *Giordano*, *supra*, 42 Cal.4th 644, 657-662.)  Moreover, given the increased penal sanctions for death-producing criminal conduct, there is little chance that the possibility of reduced restitution to an instantly deceased victim who leaves no survivors will encourage criminal homicide.

Finally, we note that, although the Constitution does not *require* restitution for personal losses incurred by a crime victim after he or she has died, it does not *preclude* the Legislature from providing for such recovery.  The Legislature is therefore free to decide that restitutionary recovery should include injury and loss resulting from the defendant's criminal conduct, even where the defendant's victim dies promptly and leaves no survivors to seek restitution on their own behalf.

## CONCLUSION

The restitutionary award at issue, made payable to the decedent's estate, represents post-death diminution in the value of property the decedent owned in life, funeral and burial expenses, and costs of estate administration.  But the estate was not a "direct victim" of defendant's crime, and thus was not entitled to restitution for its own expenses incurred as a result of the decedent's death. Moreover, though a decedent's personal representative is authorized to receive, on the decedent's behalf, restitution for economic losses the decedent personally incurred prior to death as an actual victim of the defendant's crime, here there were no such personal, pre-death losses.  Hence, no portion of the award to the estate in this case is authorized by the Victims' Bill of Rights, or by section

21

1202.4.  The Court of Appeal erred in upholding the award, or any part of it.

Accordingly, the Court of Appeal's judgment is reversed in its entirety.

BAXTER, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

22

**Name of Opinion** People v. Runyan

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 188 Cal.App.4th 1010
**Rehearing Granted**

_____

**Opinion No.** S187804
**Date Filed:** July 16, 2012

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Marcelita Haynes

_____

**Counsel:**

Jason Andrew Lieber, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan Sullivan Pithey, Lawrence M. Daniels, Roberta L. Davis, Lauren E. Dana and Shira B. Seigle, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jason Andrew Lieber
Lieber Williams & Labin
22130 Clarendon Street
Woodland Hills, CA  91367
(818) 836-6025

Shira B. Seigle
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2356