Filed 7/14/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MATTHEW SAM MAZUR on Habeas Corpus. | D079597 |
| | (Super. Ct. No. SCD261283) |

Petition for writ of habeas corpus challenging a judgment of the Superior Court of San Diego County, Laura W. Halgren, Judge.  Granted.

Thomas E. Robertson for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Robin Urbanski, Assistant Attorney General, Sharon Rhodes and Kristen K. Chenelia, Deputy Attorneys General, for Respondent.

Petitioner Matthew Sam Mazur perpetrated a fraudulent investment scheme that resulted in his conviction on 35 felony charges and various sentencing enhancements.  After an appeal to this court that resulted in resentencing, and several subsequent unsuccessful petitions for writs of habeas corpus, Mazur filed the present petition challenging the imposition of

an on-bail enhancement under Penal Code section 12022.1.[1]  Mazur argues his counsel was ineffective for failing to challenge the enhancement because the statute, by its terms, did not apply.  Because the statutory language unambiguously requires an arrest for a secondary offense, which did not occur in this case, we agree with Mazur that the on-bail enhancement was improperly imposed and that his counsel was ineffective for failing to challenge its imposition.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2015, Mazur was arrested and charged with multiple counts of securities fraud, grand theft, and other financial crimes related to his perpetration of a fraudulent investment scheme over many years.  Mazur and his co-defendant defrauded investors of millions of dollars by misrepresenting the success of a medical device company that they owned.  Mazur was released on bail several weeks after his arrest.

While he awaited trial, Mazur committed additional investment fraud, selling stock to a new victim in January 2016.  As a result, on January 26, 2016, the criminal complaint against him was amended to add new counts of grand theft of personal property (§ 487, subd. (a)), securities fraud (Corp. Code, §§ 25401, 25540, subd. (b)), and an on-bail enhancement (§ 12022.1, subd. (b)).  The same day, a warrant was issued for Mazur's arrest.  However, no ensuing arrest occurred.  On March 22, 2016, the prosecution filed a new information alleging an additional count of securities fraud and an on-bail enhancement related to communications with a different victim in February 2016.

Mazur remained on bail until the jury rendered its verdict on November 15, 2017, finding Mazur guilty on 35 of the 51 counts alleged

---

[1]    Subsequent undesignated statutory references are to the Penal Code.

against him, and returning true findings on various sentencing enhancement allegations set forth in the criminal complaint. The court also made true findings on the on-bail enhancement allegations related to the securities fraud convictions stemming from the crimes that occurred after Mazur was released on bail. Thereafter, the court sentenced Mazur to 35 years and 8 months in prison, including a consecutive term of two years based on the on-bail enhancement.

Mazur appealed the judgment of conviction, raising several claims of error, none related to the on-bail enhancement.[2] This court reversed two of the convictions and remanded the matter for resentencing. Before the resentencing hearing, the trial court requested briefing on its discretionary authority. In his briefing, Mazur did not raise any challenge to the imposition of the on-bail enhancement. At the resentencing hearing, the trial court confirmed the dismissal of the two counts identified by this court's opinion and their corresponding sentences, and exercised its discretion to strike all of the aggregate takings enhancements that were previously imposed under section 12022.6. The court imposed a new aggregate prison sentence of 27 years.

---

[2] Mazur also filed an unsuccessful petition for writ of habeas corpus in the trial court while the appeal was pending challenging the trial court's calculation of good conduct credits.

3

Thereafter, Mazur brought the present petition.[3] After requesting an informal response from the Attorney General, we issued an order to show cause why the relief sought in the petition should not be granted.

DISCUSSION

By his petition for writ of habeas corpus, Mazur asserts that his prior defense counsels' failure to challenge the imposition of the on-bail enhancement constituted ineffective assistance of counsel. The basis for Mazur's argument is section 12022.1, subdivision (b), which imposes an enhanced sentence of two years in prison when a defendant who is on bail or released on his own recognizance is arrested for another offense. The provision states: "Any person *arrested* for a secondary offense that was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years which shall be served consecutive to any other term imposed by the court." (§ 12022.1, subd. (b), italics added.) Because Mazur was not arrested for the secondary offense, he contends the enhancement, by its terms, does not apply.

The Attorney General responds that the policy animating the statute, to penalize recidivists, overrides the Legislature's use of the word "arrest." He argues the enhancement was properly applied here, and Mazur's counsel was likewise not ineffective for failing to challenge it, despite the fact that Mazur was not rearrested for the crimes he committed while on bail. The Attorney General further argues that requiring an arrest turns a mandatory

---

[3]    Before this one, Mazur brought three other unsuccessful petitions for writ of habeas corpus. First, a petition in the Superior Court challenging the court's denial of parole. Second, a petition in this court repeating the same. And finally a petition in the Superior Court asserting the same challenge to the on-bail enhancement that Mazur now makes here.

4

sentencing law into an act of discretion by law enforcement. If law enforcement chooses not to re-arrest a defendant in order to save resources, the defendant escapes a mandatory punishment and benefits unfairly.

## I

### *Legal Principles*

" ' " ' "When we interpret a statute, '[o]ur fundamental task ... is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " ' " ' " (*Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 662.) " 'In the end, we " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' " (*In re M.B.* (2009) 174 Cal.App.4th 1472, 1477.)

The interpretation of a statute presents a question of law. (*Searles Valley Minerals Operations, Inc. v. State Bd. of Equalization* (2008) 160 Cal.App.4th 514, 520.) Accordingly, we interpret section 12022.1 de novo. (*Ibid.*)

## II

### *Analysis*

Consistent with these principles, we begin our analysis with the statute. It provides in full:

(a) For the purposes of this section only:

(1) "Primary offense" means a felony offense for which a person has been released from custody on bail or on his or her own recognizance prior to the judgment becoming final, including the disposition of any appeal, or for which release on bail or his or her own recognizance has been revoked. In cases where the court has granted a stay of execution of a county jail commitment or state prison commitment, "primary offense" also means a felony offense for which a person is out of custody during the period of time between the pronouncement of judgment and the time the person actually surrenders into custody or is otherwise returned to custody.

(2) "Secondary offense" means a felony offense alleged to have been committed while the person is released from custody for a primary offense.

(b) Any person arrested for a secondary offense that was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years which shall be served consecutive to any other term imposed by the court.

(c) The enhancement allegation provided in subdivision (b) shall be pleaded in the information or indictment which alleges the secondary offense, or in the information or indictment of the primary offense if a conviction has already occurred in the secondary offense, and shall be proved as provided by law. The enhancement allegation may be pleaded in a complaint but need not be proved at the preliminary hearing or grand jury hearing.

(d) Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense. The stay shall be lifted by the court hearing the primary offense at the time of

6

sentencing for that offense and shall be recorded in the abstract of judgment. If the person is acquitted of the primary offense the stay shall be permanent.

(e) If the person is convicted of a felony for the primary offense, is sentenced to state prison for the primary offense, and is convicted of a felony for the secondary offense, any sentence for the secondary offense shall be consecutive to the primary sentence and the aggregate term shall be served in the state prison, even if the term for the secondary offense specifies imprisonment in county jail pursuant to subdivision (h) of Section 1170.

(f) If the person is convicted of a felony for the primary offense, is granted probation for the primary offense, and is convicted of a felony for the secondary offense, any sentence for the secondary offense shall be enhanced as provided in subdivision (b).

(g) If the primary offense conviction is reversed on appeal, the enhancement shall be suspended pending retrial of that felony. Upon retrial and reconviction, the enhancement shall be reimposed. If the person is no longer in custody for the secondary offense upon reconviction of the primary offense, the court may, at its discretion, reimpose the enhancement and order him or her recommitted to custody. (§ 12022.1.)

The relevant provision here is subdivision (b), which is the operative language imposing the sentencing enhancement. As Mazur asserts in his petition, the plain language of the provision requires an "arrest[] for a secondary offense" for the enhancement to be imposed. (§ 12022.1, subd. (b).) Because the language is clear and the legislative history of the statute does not demonstrate a different interpretation was intended, we agree with Mazur that the enhancement should not have been imposed.

" '[T]he purpose and intent behind a section 12022.1 enhancement, generally speaking, is ... to penalize *recidivist* conduct with increased punishment.' (*People v. McClanahan* (1992) 3 Cal.4th 860, 868.) The more specific purpose of the on-bail enhancement is to 'discourage a certain type of recidivist behavior,' by deterring 'the commission of new felonies by persons

7

released from custody on an earlier felony.' (*People v. Watkins* (1992) 2 Cal.App.4th 589, 593; see also *People v. McClanahan, supra*, at pp. 868–869.) '[S]ection 12022.1 "is intended ' " 'to meet public concern over offenders who are arrested [and] then allowed back on the street a short time later to commit more crimes,' " ' " and to recognize such an offender's " ' "breach of the terms of his special custodial status…." ' " ' " (*People v. Ormiston* (2003) 105 Cal.App.4th 676, 687.)

The provision was originally enacted in 1982. At that time, the law was structured and worded differently. It provided:

> Any person convicted of a felony offense which was committed while that person was released from custody on bail or on his or her own recognizance pending trial on an earlier felony offense shall, upon conviction of the later felony offense, be subject to a penalty enhancement as follows:
>
> (a) If the person is convicted of a felony for the earlier offense, is sentenced to state prison for the earlier offense, and is convicted of a felony for the later offense, any state prison sentence for the later offense shall be consecutive to the earlier sentence. In addition, the sentence for the later offense shall be enhanced by an additional term of two years.
>
> (b) If the person is convicted of a felony for the earlier offense, is granted probation for the earlier offense, and is convicted of a felony for the later offense, any state prison sentence for the later offense shall be enhanced by an additional term of two years.
>
> (c) If the earlier offense conviction is reversed on appeal, the enhancement shall be suspended pending retrial of that felony. Upon retrial and reconviction the enhancement shall be reimposed. If the person is no longer in custody for the later offense upon reconviction of the earlier offense, the court may, at its discretion, reimpose the enhancement and order him or her recommitted to custody. (Stats. 1982, ch. 1551, p. 6050, § 2.)

The statute was then amended in 1985 to address case law that had interpreted the statute to require a conviction on the initial offense at the time of the preliminary hearing on the second offense, and case law that held

8

the statute did not apply if the defendant had already pleaded guilty to the initial offense, i.e., was not "pending trial," before committing the second one. (*Panos v. Superior Court* (1984) 156 Cal.App.3d 626, 628 [requiring a conviction on the first offense]; *McMillon v. Superior Court* (1984) 157 Cal.App.3d 654, 657 [disallowing the enhancement if the second offense was committed after a guilty plea on the first offense, but before sentencing].) The proponents of the 1985 amendment to section 12022.1 stated that these cases had negated the purpose of the statute. According to the drafters, the law's purpose was "to deter, by punishing, all persons released on bail or [on their own recognizance] from committing new felonies."[4] (Dept. of Justice, Analysis of Sen. Bill No. 343 (1985–1986 Reg. Sess.) Mar. 7, 1985, p. 1, see also Sen. Com. on Judiciary, Analysis of Sen. Bill No. 343 (1985–1986 Reg. Sess.), p. 2.)

The 1985 amendments removed the conviction requirement and restructured the provision to the current format of the law. The amendment also added the arrest language at issue here. (Cf. Stats. 1982, ch. 1551, p. 6050, § 2, with Stats. 1985, ch. 533, p. 1906, § 1.) The parties have not pointed to any legislative history that clarifies why this particular language

---

[4]     The Department of Justice's analysis of the bill notes that the amendment was necessary because only rarely would a defendant be convicted of the earlier offense at the time of the preliminary hearing on the later offense since the defendant "has a waivable right to a preliminary hearing within 10 court days of the arraignment or plea." (Dept. of Justice, Analysis of Sen. Bill No. 343 (1985–1986 Reg. Sess.) Mar. 7, 1985, p. 2.) "Thus, the section 12022.1 enhancement could be applied in practice only in the rare, one might even say bizarre, circumstance in which the defendant was convicted of an earlier offense between the date of the later offense and the preliminary hearing for that offense. By legal maneuvering a defendant could avoid suffering the conviction within this narrow time frame in nearly every case." (*Ibid.*)

9

was added, and nothing in the legislative history that we have unearthed explains the imposition of the arrest requirement.  The legislative history shows only that the rationale for the changes was to override the case law that had limited the enhancement in an unintended way.  (Dept. of Justice, Analysis of Sen. Bill No. 343 (1985–1986 Reg. Sess.) Mar. 7, 1985, p. 1; Sen. Com. on Judiciary, Analysis of  Sen. Bill No. 343 (1985–1986 Reg. Sess.), p. 2; Cal. Youth and Adult Correctional Agency, Analysis of Sen. Bill No. 343 (1985–1986 Reg. Sess.), p. 2.)  According to the proponents, "the bill [wa]s designed to close a loophole opened by a recent court decision …" and its purpose was to "clarify and strengthen existing law."[5]  (Cal. Youth and Adult Correctional Agency, Enrolled Bill Rep. on Senate Bill No. 343 (1985–1986 Reg. Sess.) prepared for Gov. Duekmejian, Aug. 29, 1985, p. 3; Sen. Rules Comm., Analysis of  Sen. Bill No. 343 (1985–1986 Reg. Sess.), p. 2.)

Although we discern no legislative intent in 1985 to impose a new arrest requirement for the enhancement, we agree with Mazur that the language of the statute does unambiguously impose the requirement.  The Attorney General argues that the language should not control because the purpose of the statute would be contravened if an arrest were required.  He points out that the "gravamen of the [enhancement statute] rests with the defendant's conduct of committing a secondary offense" and that "[p]unishment for recidivism in this context does not require an arrest[, i]t only requires that a defendant is properly charged and convicted in conformity with due process."  While this is true, it does not negate the clear

---

[5]    The law has been slightly amended several subsequent times, but never with any change to subdivision (b).  (§ 12022.1, as amended by Stats. 1998, ch. 119 (Assem. Bill No. 1693), § 1; Stats. 2010, ch. 711 (Sen. Bill No. 1080), § 5; Stats. 2012, ch. 43 (Sen. Bill No. 1023), § 62, eff. June 27, 2012; Stats. 2013, ch. 76 (Assem. Bill No. 383), § 167.)

statutory language.  (See *Duty v. Abex Corp.* (1989) 214 Cal.App.3d 742, 750 (*Duty*) [" 'In the absence of compelling countervailing considerations, we must assume that the Legislature "knew what it was saying and meant what it said." ' "].)

We recognize that the plain meaning rule we employ "is often deceptive, as 'it may erroneously be taken to imply that words have intrinsic meanings.' " (*Duty, supra*, 214 Cal.App.3d at p. 751.)  Instead, "[t]he meaning of the words of a statute … 'can only be determined with reference to the context in which the words are used; that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are part.' [Citation.]  'The courts resist blind obedience to the putative "plain meaning" of a statutory phrase where literal interpretation would defeat the Legislature's central objective.  [Citation.]' [Citation.]  The literal construction of a statute will not prevail if it is opposed to the intent of the Legislature apparent from the statute; and we will adopt another construction to effectuate the legislative intention, if the words are sufficiently flexible to admit of such other construction."  (*Ibid*.)

We agree with the Attorney General that the policy behind the enhancement would seem to encompass Mazur.  However, we cannot say that an arrest requirement defeats the statute's central purpose or creates an absurd result since many, perhaps most, defendants will suffer a rearrest after committing the "secondary offense."  And, as Mazur points out, there is a rational purpose in imposing an arrest requirement since the decision not to arrest suggests the defendant is not sufficiently dangerous to warrant custody and perhaps unfit for additional punishment.

Further, section 12022.1, subdivision (b)'s use of the word "arrest" is not sufficiently flexible to admit another construction.  (See *People v. Sinohui*

11

(2002) 28 Cal.4th 205, 211 [When construing the statute " '[w]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' "].)  The term "arrest" is unambiguous, plainly meaning that the defendant is taken into custody for the commission of the secondary offense.  If the Legislature did not intend to require an arrest for the imposition of the enhancement, then it can (and should) amend the provision.

The Attorney General's criticism that interpretation of the statute as it is written results in unequal treatment of defendants is also reasonable.  If a defendant, like Mazur, is not rearrested because law enforcement sees no risk is allowing the recidivist to remain free on bail, the statute benefits such defendants relative to those who are arrested.  Again, however, the plain meaning of the statute dictates this result.  In *People v. Runyan* (2012) 54 Cal.4th 849 (*Runyan*), the Supreme Court held that the plain language of section 1202.4 precluded restitution to a deceased victim's estate in which the victim had no surviving heirs, despite producing the "perverse result the Legislature cannot have intended—i.e., that a criminal defendant may minimize his or her restitutionary obligation by instantly killing a victim, rather than by causing mere nonfatal injury." (*Id*. at p. 866.)  Despite this, the clear statutory language controlled.

*Runyan* noted that the Legislature was not precluded from "providing for such recovery" and was "free to decide that restitutionary recovery should include injury and loss resulting from the defendant's criminal conduct, even where the defendant's victim dies promptly and leaves no survivors to seek restitution on their own behalf." (*Runyan, supra*, 54 Cal.4th at p. 67.)  Likewise, if the result we reach here is unintended, the Legislature can act by amending the statute to require the enhancement even when there is no

12

arrest for the secondary offense by providing it applies when the defendant is "charged with," rather than "arrested for," the offense.

## III

### *Ineffective Assistance of Counsel*

The legal standard governing a claim of ineffective assistance of counsel is well established.  It arises from the right to counsel, which "is enshrined in both the federal and state Constitutions." (*People v. Booth* (2016) 3 Cal.App.5th 1284, 1301 [granting petition for writ of habeas corpus]; see also U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.)  The claim prevails where the defendant shows (1) counsel's " 'representation fell below an objective standard of reasonableness ... under prevailing professional norms" and (2) "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*Booth,* at p. 1302, quoting *In re Hardy* (2007) 41 Cal.4th 977, 1018–1019.)

Here, the failure of Mazur's prior attorneys to raise the error was unreasonable and prejudicial.  Defense counsel "has the duty to investigate carefully all defenses of fact and of law that may be available to the defendant." (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.)  This duty extends to sentencing enhancement allegations.  (See *In re Brown* (2013) 218 Cal.App.4th 1216, 1223, 1229 [finding ineffective assistance where defendant admitted prior strike allegation that did not qualify as a strike].)  Here, Mazur's prior appellate counsel admitted she did not consider the on-bail enhancement and Mazur's resentencing counsel did not respond to his inquiries about the issue, supporting an inference that she also did not consider challenging the enhancement.

13

Because we can ascertain no tactical reason for accepting the imposition of the enhancement, we agree with Mazur that his prior attorneys failed to carefully investigate all potential defenses and that they provided ineffective assistance on this narrow issue. Because this failure resulted in the imposition of the enhancement, it was prejudicial. But for the error, "the result of the proceeding would have been different." (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) Accordingly, the relief Mazur requests is warranted.

DISPOSITION

The sentencing enhancement under section 12022.1, subdivision (b) was improperly imposed. Accordingly, the judgment is modified to strike the enhancement. The matter is remanded for resentencing and the trial court is directed to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.


McCONNELL, P. J.

WE CONCUR:


AARON, J.


DO, J.