Filed 11/25/13; pub. and mod. order 12/19/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SANDRA MARIE JESSEE,<br><br>    Defendant and Appellant. | G046881<br><br>(Super. Ct. No. 07ZF0009)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge. Affirmed in part and reversed in part.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Sandra Marie Jessee of conspiracy to commit murder and special circumstance first degree murder for financial gain, all in connection with the slaying of her husband, Jack Jessee.[1]  Sandra was sentenced to life in prison without parole and ordered to pay a total of $521,414 in victim restitution.

Sandra does not contest her conviction or sentence.  She merely challenges four of the five restitution orders and the related abstract of judgment.  We reverse one of the challenged restitution orders, order the abstract of judgment corrected, and affirm the judgment in all other respects.

**FACTS**

After trial, the prosecution requested victim restitution (Pen. Code, § 1202.4 (section 1202.4)) as follows:  (1) $311,858 to Provident Life Insurance Company, as repayment of the life insurance proceeds which Sandra received as a result of Jack's death; (2) $131,291 to Jack's estate, as repayment of one-half of the 401k plan Sandra received from Jack's employer, Fujitsu Corporation; (3) $45,335 to Jack's estate as repayment of one-half of the proceeds Sandra received from the sale of the family home; (4) $29,648 to the Allstate Insurance Company, for a related fraudulent automobile theft claim perpetrated by Sandra and others; and (5) $3,282 to Jack's daughter, Chere Conrad-Williams, for costs associated with attending the hearings and trials.

On May 4, 2012, a restitution hearing was held.  The prosecution relied upon the documents and testimony presented at trial, as the basis for "proving up" the dollar amounts of the restitution requested in items 1 through 5 above.  The defense stipulated Chere Conrad-Williams was entitled to restitution in the amount of $3,282 as requested.  The defense also agreed the other dollar amounts requested were accurate, but argued Jack's estate and the insurance companies were not entitled any restitution at all.

_____

[1] We refer to Sandra Jesse and Jack Jessee by their first names only for ease of reading and to avoid confusion.  No disrespect is intended.

2

The trial court did not issue a ruling that day, but instead continued the hearing and ordered the parties to file written briefs on the issues.

The prosecution filed a memorandum of points and authorities in support of the restitution requested. The prosecution argued Jack's estate and both of the insurance companies were "victims" within the meaning of section 1202.4, subdivision (k). These arguments were based in large part on the now superseded Court of Appeal opinion (*People v. Runyan* (2010) 188 Cal.App.4th 1010, review granted Jan. 12, 2011, S187804) in the case later decided by the Supreme Court as *People v. Runyan* (2012) 54 Cal.4th 849 (*Runyan*).

The defense filed a memorandum of points and authorities in opposition to the restitution requested. Among other things, the defense argued (a) neither Jack's estate nor the insurance companies were "victims" under section 1202.4, subdivision (k), Sandra was the sole beneficiary of all of Jack's assets, including the life insurance policy, (c) there was no evidence Jack's estate even existed, (d) Provident Life Insurance Company suffered no loss, and (e) Sandra was not convicted of any crime which resulted in a loss to Allstate Insurance Company.

On June 22, 2012, another restitution hearing was held. The prosecution argued "the purpose the restitution statute is to make sure the defendant isn't unjustly enriched by her criminal conduct." The prosecution analogized to a theft case, and noted "when you steal from somebody, you have to pay it back." Finally, the prosecution contended: "So the only issue then becomes, since Jack Jessee was killed for financial gain, does his estate have the ability to recoup those losses? And I think that he does and the estate does."

The defense argued, "The purpose of restitution is to compensate victims for direct economic loss." The defense noted the life insurance was a policy Sandra and Jack had on each other, with the surviving spouse named as the direct beneficiary. "So had Mr. Jessee died of his colon cancer three months later, Mrs. Jessee would have gotten

3

every dime of that insurance policy, and no one would have ever been entitled to it. Had she predeceased him, he would have been entitled to the value of her insurance policy . . . . So this is not a direct economic loss to any victim. . . . [¶] I would make the same exact argument with respect to the 401-K money, as well as the community property shares of the marital home."

Similarly, the defense noted Jack's daughters testified they were not economically dependent upon him, and there was no evidence as to what Jack might have provided for them if Sandra was written out of his will. "The reality is, not to be crass or disrespectful, but they – in other words, it would be unjust enrichment of the asserters now to get money that they never would have gotten in the first place. . . . They suffered no losses economically." Finally, the defense argued the types of restitution at issue in this case were not the same as in *Runyan*.

The prosecution responded: "The problem is that under the law, once she's convicted of that crime, she is removed from the equation. She cannot be the beneficiary of the life insurance or the sale of the home or his 401-K if she caused the death in order to financially benefit from it."

The prosecution reasoned, "Once you remove her from the equation, which you have to do for the analysis, the beneficiary is the estate. If the People came in and said please award X number of dollars to Chere Conrad-Williams and Cheryl Deanda [Jack's daughters], that would be totally inappropriate. However, the fact that – that they would benefit if the money goes to the estate is not the relevant question. It's not whether they get unjustly enriched or whether they get money that they wouldn't have gotten if Jack Jessee had died of natural causes. That's not the analysis at all. It's the fact that the defendant killed him and she killed him to get to his life insurance and his 401-K. She can't benefit. You pull her out of the equation. It goes to the estate, and the estate distributes it as is determined under the law of the state of California or based on, you know, any contingencies he may have had in a will or a trust."

4

A short time later, the trial court stated: "Well, the fact is the money was paid, and all I am simply saying is the money is out there. It was based on the trial evidence paid to the defendant. And let's just assume that $311,000 is still in existence. Let's assume just for the sake of argument that the defendant is not entitled to it. In light of the conviction here of murder for financial gain, that money has to go somewhere. And the real question is . . . . [¶] . . . does the money go back to Provident or does it go to where? The question of where, it would seem that it would go to the estate."

Ultimately, the trial court ordered Sandra to pay restitution as follows: (1) $311,858 to Jack's estate as repayment of the life insurance proceeds; (2) $131,291 to Jack's estate as repayment of one-half of the 401k plan; (3) $45,335 to Jack's estate as repayment of one-half of the proceeds from the sale of the family home; (4) $29,748 to the Allstate Insurance Company for the fraudulent automobile theft claim; and (5) $3,282 to Chere Conrad-Williams for the costs of attending the hearings and trials. Each item was set out in a separate restitution order.

With respect to the restitution ordered in favor of Allstate Insurance Company, the trial court declared: "I am going to make a finding . . . there was proof beyond a reasonable doubt that the defendant was a perpetrator of insurance fraud regarding the false report of . . . the theft of the Ford Explorer. [¶] Allstate, according to the evidence, paid $27,748.29. My finding is that there was proof beyond a reasonable doubt that defendant defrauded Allstate Insurance out of that money."

With respect to all restitution ordered, the trial court stated: "The restitution that I am going to order will be a joint and several liability; that is, the restitution obligation will not be totally the defendant's obligation. There are three convicted people in this case so far [Sandra, her son Thomas Aehlert, and Brett Schrauben], and Mr. [Thomas] Garrick is out there pending somewhere. If he's convicted, I'm thinking that he's going to be responsible for restitution, so it's joint and several."

5

## DISCUSSION

*A. General Principles and Standard of Review*

"The burden is on the party seeking restitution to provide an adequate factual basis for the claim." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) "The standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt." (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.) Once the prosecution has made a prima facie showing of the victim's loss, "the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*People v. Prosser* (2007) 157 Cal.App.4th 682, 691.)

On appeal, we review a restitution award for abuse of discretion. (*People v. Giordano*, *supra*, 42 Cal.4th at p. 663; *People v. Hudson* (2003) 113 Cal.App.4th 924, 927.) The award must be supported by sufficient evidence under the substantial evidence standard of review. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26; *People v. Thygesen* (1999) 69 Cal.App.4th 988, 993.) "We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.)

*B. Section 1202.4*

Section 1202.4, subdivision (a)(1), declares "the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." Accordingly, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims. . . ." (§ 1202.4, subd. (f).) Restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct" (§ 1202.4, subd. (f)(3)), and must include, but is not limited to, such costs as "the value of stolen or damaged property" (§ 1202.4, subd. (f)(3)(A)).

6

For purposes of section 1202.4, subdivision (k)(1), a "victim" is defined to include, among others, the actual victim's immediate surviving family, as well as specified relatives of the actual victim, and present and certain former members of the victim's household, who sustained economic loss as a result of the crime (§ 1202.4, subd. (k)(3)(A)-(D)). A "victim" also includes "[a] corporation, business trust, *estate*, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." (§ 1202.4, subd. (k)(2), italics added.)

## C. *Sandra Cannot Benefit From Murdering Jack*

As a preliminary matter, we note the trial correctly concluded Sandra is not entitled to the life insurance proceeds or any other property, interest, or benefit she might otherwise have obtained as a result of Jack's death. The defense arguments to the contrary have no merit. Probate Code section 250 et seq. expressly provides a person convicted of murdering a decedent cannot succeed to any portion of the decedent's estate. (See generally 14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 293, p. 380.) Specifically, as relevant here, these statutes cover: (a) property under a will or by intestate succession (Prob. Code, § 250); (b) joint tenancy property (Prob. Code, § 251); and (c) the proceeds of life insurance and similar contracts (Prob. Code, § 252). For all of these purposes Sandra is deemed to have predeceased Jack. (14 Witkin, Summary of Cal. Law, *supra*, Wills and Probate, § 294, p. 381.)

## D. *Restitution Awarded to Jack's Estate*

Sandra challenges the three restitution orders in favor of Jack's estate representing the life insurance proceeds, one-half of the 401k plan, and one-half of the proceeds from the sale of the family home. She contends all three of these restitution awards were unauthorized and must be reversed based upon the Supreme Court decision in *Runyan*. Among other things, Sandra argues Jack's estate is not entitled to restitution because it was not a direct victim of her crimes. We disagree.

7

Less than a month after the trial court issued the challenged restitution orders in this case, the Supreme Court decided *Runyan*. In that case, the defendant, driving while intoxicated, killed another driver instantly in a freeway collision. The defendant was convicted of gross vehicular manslaughter with intoxication and sentenced to prison. In addition, the defendant was ordered to pay substantial restitution to the decedent's estate. The restitution award represented post-death loss in value of the decedent's business and property, together with probate, estate administration, and funeral expenses. The Court of Appeal affirmed the award by the trial court.

The Supreme Court granted review "to decide if and when one convicted of a felony is required by the California Constitution and statutes to pay restitution to the estate or personal representative of a victim of the crime who has died." (*Runyan*, *supra*, 54 Cal.4th at p. 853.) The Supreme Court held that, for purposes of restitution, the estate itself was not a "'direct victim'" of the crime that caused the decedent's death. (*Id*. at p. 857.) This was true because: "The case law has ascribed a precise meaning to the phrase 'direct victim,' as that phrase has appeared in several restitution statutes. Thus, it is established that a statute 'permitting restitution to entities that are "direct" victims of crime [limits] restitution to "entities *against which* the [defendant's] crimes had been committed"—that is, entities that are the "immediate objects of the [defendant's] offenses." [Citation.]' [Citations.]" (*Id.* at p. 856.)

As the Supreme Court explained the victim's estate in *Runyan* was not a "direct victim" of the fatal collision, because the estate was not an entity against which defendant committed his offenses, and "it was not the immediate object of those offenses." (*Runyan*, *supra*, 54 Cal.4th at p. 857.) Indeed, "the estate did not even exist at the time the crimes were committed; it came into being only as a result of those offenses. Hence, the estate is not entitled to restitution, on its own behalf, as an entity itself directly targeted and victimized by defendant's crimes." (*Ibid*.)

8

The Supreme Court also held: "[W]e are persuaded that a deceased victim's estate may, in appropriate cases, receive restitution in a different capacity, and for a different reason. When the actual victim of a crime has died, the estate, acting in the decedent's stead, steps into the decedent's shoes to collect restitution owed *to the decedent*, but which the decedent cannot personally receive because of his or her death." (*Runyan*, *supra*, 54 Cal.4th at p. 857.) "Thus, a decedent's estate . . . is a proper recipient, on the decedent's behalf, of restitution owed *to the decedent*, as an actual and immediate crime victim, for economic losses the decedent incurred as a result of the defendant's offenses against the decedent." (*Ibid*.)

Applying these principles to the case at bar reveals restitution was properly awarded to Jack's estate either on its own behalf, or in its capacity as Jack's personal representative. The logic is quite simple. Sandra was convicted of conspiracy to commit murder and special circumstance first degree murder for financial gain. There is no doubt one immediate object of those crimes was the life insurance and other assets which were owned by Jack, and which became part of Jack's estate as a result of his death. So in this sense, Jack's estate itself is an entity against which those crimes were committed. Under these circumstances, we conclude Jack's estate is entitled to restitution, on its own behalf, as an entity itself directly targeted and victimized by Sandra's crimes.

There is one problem with this conclusion. Jack's estate itself did not exist at the time those crimes were committed and only came into being as a result of those crimes. However, we also conclude this is an appropriate case for the estate to receive restitution under the alternative rationale discussed in *Runyan*. When Jack died, the estate stepped into his shoes to collect restitution owed to him, but which he could not personally receive. Thus, Jack's estate is a proper recipient of any restitution owed to Jack, for economic losses he incurred as a result Sandra's crimes. These losses include the life insurance proceeds, and at least one-half of the 401k plan and the proceeds from the sale of the family home, all of which were incurred upon Jack's death, not after.

9

*E. Restitution Awarded to Allstate Insurance Company*

Sandra also asserts that because she was convicted of conspiracy to commit murder and murder, but not insurance fraud, the restitution order in favor of Allstate Insurance Company was also unauthorized and should also be reversed. We agree. By its own terms, section 1202.4, subdivision (a)(1), only authorizes a crime victim to receive restitution "from a defendant convicted of that crime." Likewise, section 1202.4, subdivisions (a)(2) and (a)(3)(B) provide, "(2) Upon a  person being convicted of a crime . . . the court shall order the defendant to pay. . . .  [¶] . . . [¶]  (B) Restitution to the victim or victims . . . ." Based upon the plain language of these statutes, we conclude restitution may only be awarded for crimes the defendant is charged with and convicted of, even if the evidence shows beyond a reasonable doubt and the trial court finds the defendant committed an uncharged crime. Therefore, the restitution order in favor of Allstate Insurance Company constitutes and abuse of discretion and must be reversed.

*F. Abstract of Judgment*

Finally, Sandra argues the abstract of judgment is erroneous and should be amended. She notes the abstract makes no mention of the trial court's oral pronouncement that the restitution orders are to be joint and several obligations of Sandra and her coconspirators, and the abstract incorrectly includes "Provident Life Insurance, Allstate Insurance, and Fujitsu" as parties awarded restitution. The Attorney General agrees as do we.

Therefore, the abstract shall be amended to reflect the written restitution orders in favor of the estate of Jack Jessee and Chere Conrad-Williams filed on June 26, 2012, and to delete any reference to Provident Life Insurance Company, Allstate Insurance Company and Fujitsu. Furthermore, the abstract shall be amended to state the restitution orders are joint and several obligations of Sandra, Thomas Aehlert, and Brett Schrauben, the coconspirators convicted thus far, together with Thomas Garrick, if and when he is ever convicted of these same crimes.

10

## DISPOSITION

All of the restitution orders in favor of the estate of Jack Jessee and Chere Conrad-Williams are affirmed. The restitution order in favor of Allstate Insurance Company is reversed. The clerk of the Orange County Superior Court is directed to amend the abstract of judgment to (a) delete any reference to Provident Life Insurance Company, Allstate Insurance Company and Fujitsu, and (b) state the restitution orders are joint and several obligations of Sandra Jessee, Thomas Aehlert, and Brett Schrauben, together with Thomas Garrick, if and when he is ever convicted of these same crimes. The clerk of the Orange County Superior Court is further directed to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.


THOMPSON, J.

WE CONCUR:


FYBEL, ACTING P. J.


IKOLA, J.

11

Filed 12/19/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>SANDRA MARIE JESSEE,<br><br>    Defendant and Appellant. | G046881<br><br>(Super. Ct. No. 07ZF0009)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION AND MODIFYING OPINION; NO CHANGE IN JUDGMENT |

Respondent requested that our unpublished opinion, filed on November 25, 2013, be ordered published. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request for publication is GRANTED.

It is ordered that the opinion filed on November 25, 2013, be modified as follows:

1. On page 7, delete the first sentence and replace it with the following:

> For purposes of section 1202.4, a "victim" is defined to include, among others, the actual victim's immediate surviving family (§ 1202.4, subd. (k)(1)), as well as specified relatives of the actual victim, and present and certain former members of the victim's household, who sustained economic loss as a result of the crime (§ 1202.4, subd. (k)(3)(A)-(D)).

2. On page 10, in the final sentence of the first paragraph, delete the word "and" and replace it with "an."

The modification does not change the judgment.

THOMPSON, J.

WE CONCUR:

FYBEL, ACTING P. J.

IKOLA, J.

2