Filed 7/11/14  P. v. Stamm CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B249126 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA086085) |
| v. | |
| JORDAN ROSSETTER STAMM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Terry Smerling, Judge.  Reversed.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant, Jordan Rossetter Stamm, pleaded no contest to evading a peace officer with willful disregard for human safety and property. (Veh. Code, § 2800.2, subd. (a).) The trial court suspended imposition of sentence and placed defendant on formal probation. The trial court ordered defendant to pay $2,073.08 in victim restitution (Pen. Code, § 1202.4, subd. (f)) to an individual with whom defendant had an automobile accident almost one hour after his encounter with the peace officer. Defendant argues no substantial evidence supported the restitution order amount and the trial court failed to articulate the basis for its calculation. We reverse the order because defendant, at the time of the accident had long reached a place of temporary safety and thus the crime had ended.

## BACKGROUND AND DISCUSSION

Defendant pleaded guilty to evading a peace officer in violation of Vehicle Code section 2800.2, subdivision (a) while riding on his motorcycle. From 45 minutes to one hour after the police had terminated their pursuit of defendant, and defendant had evaded the police officers, defendant needed to get some gas for the motorcycle. He was not concerned at the time with any possibility the police were still looking for him. He then got into an accident with Mr. Greenwall. Notwithstanding defendant's argument that compensation should be determined by the insurers for defendant and Mr. Greenwall, the trial court concluded that defendant should be required to pay restitution under Penal Code section 1202.4, subdivision (f) to Mr. Greenwall for half of the damage to the latter's automobile, based on 50 percent comparative fault.

The uncontested evidence shows that the accident took place long after the duration of the underlying crime and when defendant reached a place of temporary safety. (See *People v. Wilkins* (2013) 56 Cal.4th 333, 342.) Accordingly, the accident

has no relationship to the crime, and the restitution order constituted error. Even if defendant did not raise before the trial court this specific issue, sufficiency of the evidence to support a ruling is not subject to the rule that the failure to object will foreclose review. (*People v. Viray* (2005) 134 Cal.App.4th 1186, 1217; *People v. Butler* (2003) 31 Cal.4th 1119, 1126; *Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, Fn. 17; see also *People v. McCullough* (2013) 56 Cal.4th 589, 596.)

## DISPOSITION

The order of restitution is reversed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

I concur:

MINK, J.[*]

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

3

TURNER, P. J.


I respectfully dissent.  The argument that the pursuit was over was not raised in the trial court.  That argument has been forfeited.  Putting aside the fact the issue has been forfeited, the trial court was not obligated to accept defendant's testimony that the pursuit had ended an hour before.  No abuse of discretion occurred.

At the restitution hearing, John Greenwall testified he was driving his 2002 Jeep Liberty in Pasadena on April 6, 2012.  Mr. Greenwall was making a left turn from McDonald Street onto Lincoln Avenue northbound.  The weather was sunny and clear.  Mr. Greenwall was familiar with the intersection because he lived on the block.  Mr. Greenwall stopped for five seconds at the stop sign on McDonald Street.  The traffic was relatively heavy.  Mr. Greenwall looked in both directions.  He did not see anyone coming.  Mr. Greenwall pulled onto Lincoln Avenue and crossed through the first lane.  As Mr. Greenwall entered the second lane, a passenger in his vehicle yelled, "Stop."  Mr. Greenwall "hit the brakes" and stopped his jeep.  Two seconds later, a motorcycle hit Mr. Greenwall's jeep's front left fender.  The impact damaged the jeep's front fender, left headlight and front grille.  The motorcycle skidded to a stop in front of a church.  Defendant stood up quickly.  Mr. Greenwall testified:  "[Defendant] stood up and spoke to some bystanders, who had exited the church.  And indicated that he wanted to leave."  Police officers arrived within five minutes.  They arrested defendant.  The motorcycle appeared to be heavily damaged.

On cross-examination, Mr. Greenwall confirmed he was required to yield to traffic going southbound on Lincoln Avenue.  Mr. Greenwall waited for the southbound traffic to pass before he turned onto Lincoln Avenue.  Mr. Greenwall looked northbound and southbound before pulling into the intersection.  Mr. Greenwall did not see anyone coming from his right or left.  Mr. Greenwall did not notice the oncoming motorcycle until it was just about to strike him.  On redirect examination, Mr. Greenwall testified the

cost of damage to his vehicle was estimated at $4,146.15. Mr. Greenwall was seeking $4,146.15 in restitution.

Defendant testified he was riding a Kawasaki motorcycle. It was equipped with a headlight. The headlight stayed on all the time. The headlight was in working order on the day of the accident. Defendant had been traveling on Lincoln Avenue for more than a half mile prior to the accident. Defendant was looking for a gas station. Defendant did not have a stop sign at the intersection of Lincoln Avenue and McDonald Street. Defendant had not changed lanes. Defendant did not notice Mr. Greenwall's jeep until a second or two prior to impact. Defendant testified: "[H]e pulled out right in front of me. I hardly had time to react so it was a complete surprise." Defendant applied his brakes but hit the jeep. He went over the jeep's hood and landed on the opposite side of the street. Defendant came to rest 10 to 12 feet from his motorcycle. He was surprised and stunned. His entire body hurt. Defendant waited for an ambulance and police officers to arrive.

On cross-examination, defendant admitted that about an hour prior to the accident, police officers had attempted to stop him. Police officers had chased him but then terminated the pursuit. Defendant testified he had not seen any police for 35 to 40 minutes prior to the collision. Defendant said that after successfully evading the police that morning he felt scared and nervous. Defendant denied he was still in an anxious state when the collision occurred. When asked whether he felt he was free and clear when the collision occurred, defendant admitted, "I wouldn't say in the free and clear, no." Defendant testified: "I was focused on finding gas. Keeping my eyes on the road." When police officers arrested defendant, he told them, "I kn[e]w that if I drove fast and hard enough you would eventually end the pursuit and I would lose you in traffic[.]"

Deputy District Attorney Marlene Sanchez argued: "[C]ircumstantially, if a motorcycle comes in contact with something substantial, a car, a jeep and causes that kind of damage then you would assume that the speed had to have been significant. [¶] There was substantial damage to the victim's car. There was substantial damage to the motorcycle. So if the speed was minor then you would expect that there would be minor

2

damage." The trial court noted: "I don't even have any evidence what the speed limit was in this area. [¶] You know the defendant is clearly guilty of the crime, he admitted that. [¶] The question is whether he's the cause of this accident or not. I don't know how I can conclude he's the cause of the accident." Ms. Sanchez responded: "Your Honor, if the victim had indicated and testified that he looked both ways and out of the blue . . . this motorcycle comes down the street and hits his driver's side fender, it's obvious that he came out from nowhere. [¶] And that a motorcycle causing this kind of damage it had to have been significant speed to cause that damage. And to not only cause that damage but to slide over a substantial distance where it then fell to the ground."

Deputy Public Defender Eric Stanford argued: "Your Honor, I'm sorry but in order for that kind of speed we're talking about a hundred miles an hour to come out of nowhere on to a major street. There's no evidence of anything of that nature. [¶] What we have is somebody who pulled out. Didn't see the motorcycle and stopped in the middle of the street. And the motorcycle hits the vehicle. We have no evidence of anything else." The trial court commented, "Well, I'm thinking maybe this is a question of comparative fault. [¶] . . . [¶] . . . It seems to me the victim is not without fault in this matter, in that he didn't - - I don't have any information that the motorcycle was speeding. [¶] I mean, Miss Sanchez wants me to infer that. I don't think I can. I don't know where the motorcycle came from exactly. [¶] I have [defendant] saying his vehicle was going straight down the middle of the lane. [¶] . . . [¶] . . . On the other hand, the victim didn't see him." The trial court concluded: "I'm going to cut the restitution in half. I'm going to find that the victim . . . had comparative fault 50 percent. [¶] . . . [¶] I could infer that maybe [defendant] was . . . unnerved by the police chase from before . . . ." It bears emphasis that Mr. Stanford never argued the pursuit had ended.

Our review is for an abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663-664; *People v. Jessee* (2013) 222 Cal.App.4th 501, 507; *People v. Petronella* (2013) 218 Cal.App.4th 945, 969.) As our Supreme Court has held: "The abuse of discretion standard is 'deferential,' but it 'is not empty.' (*People v. Williams* (1998) 17

3

Cal.4th 148, 162.) '[I]t asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' (*Ibid.*) Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the surviving victim's economic loss. To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*People v. Giordano, supra,* 42 Cal.4th at pp. 663-664; accord, *People v. Jessee, supra,* 222 Cal.App.4th at p. 507; *People v. Petronella, supra,* 218 Cal.App.4th at p. 969.) When, as here, the restitution order is a condition of probation, the trial court's discretion is even broader. (*People v. Giordano, supra,* 42 Cal.4th at p. 663, fn. 7; see *People v. Anderson* (2010) 50 Cal.4th 19, 26-27.) This is because Penal Code section 1203.1, subdivision (j) grants the trial court broad discretion in imposing conditions of probation, including restitution. (*People v. Giordano, supra,* 42 Cal.4th at p. 663, fn. 7.)

The trial court did not abuse its broad discretion. Mr. Greenwall was familiar with the intersection. Mr. Greenwall testified he came to a stop and looked both ways before making his left turn. Mr. Greenwall did not see defendant's motorcycle until just before the collision. On this evidence, the trial court reasonably concluded defendant was at least 50 percent at fault. Hence, it awarded Mr. Greenwall half his damages. The trial court clearly stated its method of calculating the restitution. The method employed was rational.

The argument the pursuit had ended was never raised by defense counsel in the trial court. Thus, the new theory that the pursuit had ended may not be raised for the first time on appeal. (*People v. Souza* (2012) 54 Cal.4th 90, 137-138; *People v. Fauber* (1992) 2 Cal.4th 792, 831.) Mr. Stanford argued that the victim was entirely or partially at fault. Mr. Stanford never argued the pursuit was over.

Further, the trial court was free to disbelieve defendant's preposterous testimony he was still driving at a high rate of speed 35 minutes after he had successfully evaded

4

the police.  (*People v. Wilson* (2005) 36 Cal.4th 309, 329 ["A trier of fact could have reasonably rejected portions of defendant's self-serving testimony that he did not want to kill Berrie and that it was Loar who offered to eliminate Berrie."]; *People v. Anderson* (1990) 52 Cal.3d 453, 470 ["In light of the whole record, defendant's self-serving testimony affords insufficient basis for overturning the trial court's finding of voluntariness."]; *People v. Russell* (2010) 187 Cal.App.4th 981, 991 ["If we draw all reasonable inferences in favor of the decision of the trial court . . . and accept the proposition that the trial court could have rejected Russell's self-serving testimony, we can easily determine Russell was still in flight from the burglary at the time of the victim's death."]; *People v. Castro-Vasquez* (2007) 148 Cal.App.4th 1240, 1246 ["We agree the trial court could have rejected appellant's testimony, if given, but it did not do so."]; *People v. Morales* (1993) 19 Cal.App.4th 1383, 1391 ["The contention misses the mark because the jurors were entitled to disbelieve defendant's self-serving testimony and other evidence which suggested Johnny broke into the vehicle simply so the brothers could use it temporarily in order to get home."]; *People v. Lashley* (1991) 1 Cal.App.4th 938, 946 ["The court was free to reject, as it necessarily did, defendant's self-serving testimony that he intentionally shot toward Goudeau intending merely to scare or to inflict a non-fatal wound."].)  Defendant admitted he did not feel "free and clear" when the collision occurred.  For these reasons, I would affirm.

TURNER, P. J.

5