Filed 4/21/26  P. v. Colosi CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THERESA LYNN COLOSI,<br><br>    Defendant and Appellant. | 2d Crim. No.B340639<br>(Super. Ct. No. 19CR12190)<br>(Santa Barbara County) |

Theresa Colosi appeals following her guilty plea to assault with a deadly weapon (Penal Code[1] § 245, subd. (a)(1)) and admission she personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)).  The trial court sentenced appellant to five years in state prison.  The court also issued a 10-year protective order (§ 136.2, subd. (i)) and ordered restitution.  Appellant contends the trial court abused its discretion when it denied her pre-trial motion for mental health diversion, and

---

[1] Undesignated statutory references are to the Penal Code.

when it ordered restitution to Cynthia Hann. [2]  Appellant also contends the court was not authorized to issue the 10-year protective order.  Respondent agrees the restitution amount is wrong, and the protective order is unauthorized.  We will correct the restitution amount and strike the protective order.  In all other respects we will affirm.

FACTUAL AND PROCEDURAL SUMMARY[3]

In December 2019 during a court ordered supervised visit with her minor child, appellant assaulted the visitation supervisor, Cynthia Hann.  As appellant, Hann and the minor left appellant's vehicle in a bowling alley parking lot, appellant took with her a metal compressed gas canister.  Appellant and Hann stopped and had a discussion about appellant's objection to the visitation orders.  At some point, the child began to return to the car and appellant told him to stay in the car.  Hann turned toward the child and told him to come back at which point appellant hit Hann in the head and face and body multiple times with the canister causing serious injuries.  Appellant then fled in her vehicle, and took a flight she had previously chartered under assumed names for herself and child, from Lompoc to Whitefish, Montana where she was later arrested.  At the time of her arrest appellant had in her possession a few thousand dollars and passports.

---

[2] The trial court granted a certificate of probable cause to appeal the denial of the motion for mental health diversion.

[3] We summarize evidence admitted at the preliminary hearing and at the hearing on appellant's motion for mental health diversion.

Appellant was charged with attempted murder (§ 664/187, subd. (a), count 1), assault with a deadly weapon (§ 245, subd. (a)(1), count 2), attempted kidnapping of a child under 14 (§ 664/207, subds. (a) & (e), count 3), attempted child stealing (§ 664/278, count 4), and disobeying a domestic relations order (§ 273.6, subd. (a), count 5).

In April 2023, appellant pleaded guilty to one count of assault with a deadly weapon (§ 245, subd. (a)(1)) and admitted the special allegation that she personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). Sentencing was continued to allow appellant to serve her time in local custody.

In March 2024, the court sentenced appellant to five years in state prison and issued a 10-year protective order pursuant to section 136.2, subdivision (i). On January 30, 2025 the court entered formal orders awarding victim restitution in the amount of $69,373.88 and $18,429.15 to the victims, and $7,148.15 to the California Victim's Compensation Board (Cal VCB).

*Mental Health Diversion Proceedings*

On September 20, 2021, appellant filed a motion for mental health diversion. Attached was a report prepared by psychologist Dr. Nancy Kaser-Boyd who had evaluated appellant. The prosecution filed opposition including a report from psychologist Dr. Brandon Yakush. Because appellant refused to meet with Dr. Yakush, his report was based upon his review of records.

At the May 2022 hearing both experts testified. Dr. Kaser-Boyd testified appellant suffered from major depressive disorder and post-traumatic stress disorder (PTSD) at the time of the alleged crime. She opined that distorted thinking, a symptom of a major depressive episode, was a substantial factor in the plan to kidnap her son and to assault Hann. Dr. Kaser-Boyd also

3

opined that appellant momentarily "entered into a dissociative state" at the time she assaulted Hann because Hann had indicated that appellant would not have visitation over Christmas.

Dr. Yakush testified Dr. Kaser-Boyd failed to consider alternative explanations for appellant's behavior and relied primarily on appellant's self-report of a dissociated episode despite the lack of any supportive objective evidence. He opined that even if appellant suffered from those disorders, the facts fell "short of the significant or . . . substantial factor that this law requires."

In a detailed written ruling the trial court denied appellant's request. The court agreed with Dr. Kaser-Boyd that appellant suffers from major depressive disorder and PTSD, both DSM-5 disorders. The trial court disagreed, however, with the doctor's opinion that the kidnapping and attack on the supervisor occurred "while [appellant] was in a short 'dissociative state.'"

The court noted appellant's conduct showed planning, and appellant armed herself with a metal compressed gas cannister at the time she got out of the car "for no apparent reason other than to use it as a weapon."

## DISCUSSION

### *Mental Health Diversion*

At the time appellant's motion for pretrial diversion was adjudicated the court was authorized to grant pretrial diversion if a defendant met six statutory requirements. Two of those requirements were that the court be "satisfied" that the defendant suffers from a recognized mental disorder and that "defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, former subd.

4

(b)(1)(A)-(B).)  Even if a defendant met all of the requirements the court retains the discretion to deny diversion.  (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888.)

"'On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'  [Citation.]  'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.'  [Citation.] [¶] "'We do not reweigh evidence or reevaluate a witness's credibility." [Citations.]  "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support [a trial court's factual finding]."'  [Citation]  ""To warrant the rejection of the statements given by a witness who has been believed by [the trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.""  [Citation.]  Conversely, the trier of fact generally may reject even uncontradicted testimony, whether by lay or expert witnesses, so long as the rejection is not arbitrary."  (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079-1080.)

"The trial court's determination 'whether the defendant's disorder played a significant role in the commission of the charged offense' is 'a quintessential factfinding process' subject to

review for substantial evidence." (*People v. Gerson*, *supra*, 80 Cal.App.5th. at p. 1079.)

Appellant contends the court abused its discretion by denying pretrial diversion because substantial evidence does not support the court's finding that her mental disorders were not a significant factor in the commission of the charged offenses. She argues "[t]here is a copious amount of evidence referring to appellant's mental state at the time of the incident . . . and a clear nexus between her mental disorders and her actions in the instant offense." But the issue is not whether there is evidence to support a different result, it is whether there is evidence to support the trial court's decision. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 ["The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence."].)

Dr. Kaser-Boyd testified that at the time of the assault appellant was in a major depressive episode, and she was triggered due to her childhood PTSD and felt threatened when Hann told her she would not have a visit at Christmas. As a result appellant entered into a momentary dissociative state and assaulted Hann.

Dr. Yakush's report and his testimony was to the contrary. He noted Dr. Kaser-Boyd's opinion was that appellant felt threatened by Hann yet appellant never voiced any fear, "only frustrations at the alleged victim for interfering with the visitation schedule." He found concerning that Dr. Kaser-Boyd's opinion appellant was in a dissociative state was based solely on appellant's self-report of her mental state at the time of the assault. Dr. Yakush also questioned Dr. Kaser-Boyd's opinion

6

that appellant suffered a "loss of control" and was in a dissociative state in light of evidence appellant had been planning and made arrangements to abduct her child from the visit. "I cannot understand how someone can premedi[t]ate a crime and then go on to commit the crime because of an altered mental state."

The trial court agreed with Dr. Yakush. It found Dr. Kaser-Boyd's opinion that appellant was in a "short 'dissociative state'" was not supported by this evidence. We will not reweigh the conflicting evidence. The trial court was free to reject Dr. Kaser-Boyd's opinion.[4] (*People v. McCoy* (1995) 40 Cal.App.4th 778, 785 ["The trial court may reject completely the testimony of an expert witness, as long as its decision to do so is not arbitrary."].)

Effective January 1, 2023, section 1001.36 was amended to create a rebuttable presumption that a defendant's mental disorder is a significant factor in their commission of the charged offenses. (§ 1001.36, subd. (b)(2).)[5] The amendment shifted the burden to the prosecution to rebut the presumption by clear and

---

[4] Because we affirm the trial court's finding appellant was not eligible for diversion we do not address appellant's other contentions why she should have been granted diversion. (See, *People v. Bunas* (2022) 79 Cal.App.5th 840, 860.)

[5] The statute now states in pertinent part: "If the defendant has been diagnosed with a mental health disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

convincing evidence that the mental health disorders were not a motivating, causal or contributing factor to defendant's involvement in the alleged offense.

Appellant contends these changes to section 1001.36 that went into effect after she was denied pretrial diversion apply to her case. We agree. (*People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*); *People v. Doron* (2023) 95 Cal.App.5th 1, 6.)

Appellant further contends this matter should be conditionally reversed and remanded so the trial court can exercise its discretion to determine her motion for pretrial diversion in light of the amendment. We disagree.

Appellant has forfeited this claim. (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.) *Frahs*, decided in 2020, made clear that recently enacted section 1001.36 applied in nonfinal cases. (*Frahs*, *supra*, 9 Cal.5th at pp. 631-632.) Thus, when the law was amended effective January 1, 2023, appellant should have known the amendments applied retroactively.

Once the law was amended, appellant had more than three months before she pled and more than seven months before she was sentenced to seek reconsideration of the trial court's denial of diversion. She did not. (Compare *People v. Brown* (2024) 101 Cal.App.5th 113, 128 [failure to seek reconsideration excused where amendment to statute effective after entry of plea but only 10 days before sentencing].)

In a supplemental letter brief, appellant contends that if forfeiture applies, her counsel was ineffective in failing to seek reconsideration. We again disagree.

"In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient, and that the defendant suffered

8

prejudice as a result of such deficient performance." (*People v. Mickel* (2016) 2 Cal.5th 181, 198, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-692 [80 L.Ed.2d 674].)

The record is silent, however, why defense counsel failed to seek reconsideration under the amended law. It is possible that counsel was unaware of the newly passed statute. It is also possible, however, that counsel had sound reasons not to pursue the issue. For example, appellant may have changed her mind and decided to refuse to accept the treatment required for participation in the diversion program. Because trial counsel's reasons for not raising the issue are not readily apparent, the issue is more appropriately considered in a habeas corpus proceeding. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; *People v. Wilson* (1992) 3 Cal.4th 926, 936.)

*Restitution*

"[W]e review the trial court's restitution order for abuse of discretion." (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) We apply the substantial evidence standard in a challenge to the sufficiency of evidence to support a factual finding necessary for a victim restitution order. (*People v. Jessee* (2013) 222 Cal.App.4th 501, 507.) "'''[S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes''' . . . because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation].'" (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1275.) "The court '"may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole."' . . . It may make a restitution order based on 'truncated evidence' such as declarations or probation reports, business records, and checks."

(*People v. Plains All American Pipeline, L.P.* (2024) 101 Cal.App.5th 872, 898-899.)

Appellant contends the trial could not award Hann hospitalization expenses of $4,344.39 because there is no substantial evidence in the record that the costs were linked to the assault. During the hearing appellant objected to this expense arguing "I do object to the most recent request for healthcare expenses relating to an admission into Cottage Hospital in April of 2023. This letter from her physician, the gastroenterologist, specifically says that the incident in December 2019 did not cause her acute diverticulitis. And therefore, I don't think that the attack had a direct effect on this hospitalization, that there were possibly other factors leading to it. But stress is stress, and that's what triggers this illness." The prosecution responded arguing "the hospitalization in April of 2023 occurred during the very week that we were set for trial. Ms. Hann was extremely traumatized by the thought of having to come to court to see the defendant, and that stress directly caused this hospitalization. And I believe that's why the doctor wrote the supporting letter."

The court ruled the hospitalization costs "seems to be causally connected to this case." Although the physician's letter supporting the request is not in the record both counsel referred to it. The trial court was authorized to rely upon it and counsel's statements to conclude the hospitalization expenses were "causally connected to this case." There was no abuse of discretion.

Both parties agree and the record reflects, however, the total restitution awarded to Hann includes two computational errors. The court erroneously included a $4,520 attorney fees bill

10

twice and included $880 for an unknown reason.  We will correct those errors.  (See *People v. Smith* (2001) 24 Cal.4th 849, 854.)

*Protective Order*

At sentencing, the trial court imposed a 10-year protective order under section 136.2, subdivision (i) prohibiting appellant from contact with her child, the child's father and the father's partner.

Appellant contends the order was not authorized and should be stricken.  Respondent agrees as do we.

Section 136.2 subdivision (i) authorizes a court to issue an order restraining a defendant for up to 10 years when the defendant has been convicted of a qualifying crime.[6]  Appellant's

---

[6] Section 136.2 subdivision (i) states in part:  "(1) When a criminal defendant has been convicted of a crime involving domestic violence, as defined in Section 13700 or in Section 6211 of the Family Code, a violation of subdivision (a), (b), or (c) of Section 236.1 prohibiting human trafficking, Section 261, 261.5, former Section 262, subdivision (a) of Section 266h, or subdivision (a) of Section 266i, a violation of Section 186.22, or a crime that requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime.  The order may be valid for up to 10 years, as determined by the court. . . .  [¶] (2) When a criminal defendant has been convicted of a crime involving domestic violence, as defined in Section 13700 or in Section 6211 of the Family Code, a violation of Section 261, 261.5, or former Section 262, a violation of Section 186.22, or a crime that requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a percipient witness to the crime if it can be established by clear and convincing evidence that the witness has been harassed, as

11

conviction for assault with a deadly weapon under section 245 is not a qualifying crime under section 136, subdivision (i).  The court did not have statutory authority to issue the protective order, therefore, the order must be stricken.  (*People v. Garcia* (2022) 76 Cal.App.5th 887, 901.)

## DISPOSITION

The criminal protective order dated March 12, 2024 is reversed.  The trial court is directed to amend its order of January 30, 2025, to reflect that appellant shall pay restitution to Cynthia Hann (Cindy Hann) in the amount of $63,973.88.  The clerk of the superior court is directed to prepare and forward the amended abstract reflecting this correction to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.          BALTODANO, J.

---

defined in paragraph (3) of subdivision (b) of Section 527.6 of the Code of Civil Procedure, by the defendant."

12

Michael Carrozzo, Judge

Superior Court County of Santa Barbara

_____

Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.