Filed 8/29/23  P. v. Johnson CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B321220 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA053603) |
| v. | |
| ANTWOINE LASHEY JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Reversed and remanded with directions.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, William H. Shin and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Antwoine Lashey Johnson appeals from a postconviction order denying his petition for resentencing under Penal Code 1172.6[1] as to his attempted murder conviction entered pursuant to a negotiated plea in which he also admitted he personally used a firearm. After appointing counsel and ordering briefing, the superior court determined at the prima facie review phase that Johnson was not entitled to relief because he was the actual shooter. The court relied on nine police reports, including an incident report and eight supplemental reports, in which the victim and multiple witnesses identified Johnson as the shooter, as well as Johnson's admission that he personally used a firearm in commission of the offense.

On appeal, Johnson contends the superior court erred in relying on the police reports to find him ineligible for relief because the reports were inadmissible hearsay and not part of the record of conviction. Johnson also argues his admission he personally used a firearm does not mean he was the shooter. We agree with both contentions and reverse. We direct the superior court to issue an order to show cause and to hold an evidentiary hearing.

———————————

[1]     Further undesignated statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Police Reports Describing the Shooting*

On June 24, 2011 five deputies and two detectives from the Los Angeles County Sheriff's Department interviewed victim Joshua Bragg and multiple witnesses regarding the shooting of Bragg that day, and a third detective interviewed two witnesses four days later. Each officer authored a police report setting forth the witness statements.

### 1.    *Deputy Foster's incident report*

On June 24 Deputy C. Foster responded to a call involving an assault with a deadly weapon. When Deputy Foster arrived at the scene, he saw Bragg lying down near the front door of a house covered in blood. Bragg told Deputy Foster that he was shot by an "unknown [Black] male adult" (later identified as Johnson) who left the location in a green Honda. Bragg was then transported to the hospital.

Bragg's cousin James Williams stated that when he walked to the front yard that day, he saw Johnson pull up to the front of the residence in a green Honda. Johnson asked Bragg, "'Where are you from?'" Williams told Johnson that Bragg "does not gang bang." Johnson then brandished a small semiautomatic gun and chased Bragg around a vehicle parked in the driveway. Williams tackled Johnson, and the gun flew out of Johnson's hand. Johnson then retrieved the gun and shot at Bragg three to four times.

Deputy Foster also interviewed Williams's mother, Louann Blocker. She heard arguing in the front yard and saw Bragg standing near her garage door. Blocker stated Johnson asked

3

Bragg where he was from, then Johnson brandished a handgun, chased Bragg, and shot at Bragg three to four times.

2. *Detective Owen's and Deputy Edwards's supplemental reports*

Detective S. Owen also responded to the scene, along with Sergeant R. Rush. The officers saw Bragg on the ground bleeding from a gunshot wound to his left arm. Williams told Detective Owen that neighbors Adrian Benson and Timeshia Sherriel had spoken with Johnson prior to the incident.

Sherriel told Detective Owen and Sergeant Rush that Bragg walked by her house before the shooting and said to Sherriel's cousin, Chris Prather, "'What's up, blood?'" Prather responded, and Bragg then walked away. A Black man identified by Sherriel as "G-Face"[2] then entered his car and drove in the same direction as Bragg. Prather said he was "'going to get into the middle of this,'" and he rode his bike in the same direction as the other two men. However, the two women told Prather not to get involved, grabbed him, and ran back to their home with him.

Deputy Edwards then arrived at the location with his partner and detained Benson in the back seat of his patrol car, where the two deputies interviewed her. Benson told the deputies she saw a man she knew as "G-face" exit a green car with a gun in his hand. She knew G-face because her "baby's daddy" was in the same gang, Blood on Point, and the men were friends. Benson saw four Black men yelling in the middle of the street, including G-face and three other Black men she did not know. Benson then

---

[2] Sherriel initially identified the shooter as "Dog," but after being detained in the back seat of Detective Knittel's patrol car, she stated it was "G-Face" who was the shooter.

saw G-face point his gun at one of the men. Benson went inside her house, and shortly thereafter she heard a gunshot. Using Sheriff's Department resources, Deputy Edwards determined Johnson was a "Blood on Point" gang member who went by the name of "'G-Face.'" Further, Benson's "baby's daddy" was Johnson's brother.

### 3. *Deputy Castillo's supplemental report*

Later on June 24 Deputy Y. Castillo interviewed Bragg at the hospital. Bragg stated he was on the way to the store to meet his girlfriend when he passed by a group of people standing outside a house down the street from where he lived. The people stared at him as he walked by. On his way back to his house with his girlfriend, Bragg passed by the same house and was approached by a Black male adult, who stated, "'What up blood?'" Bragg responded that he did not "'bang'" and "he was not a blood." Bragg's girlfriend pulled him away, telling him to ignore the man. When Bragg and his girlfriend started to walk away, one of the men said, "'[S]ave yourself[,] keep walking.'" ~CT 72)~

Shortly after Bragg arrived home, a green Honda pulled up, and Johnson exited the vehicle and pulled a small gun from his waistband. Johnson said, "'So you thought I was gonna leave you alone huh?'" Bragg approached Johnson and explained he was not in a gang. Johnson began to chase Bragg around the vehicle parked in the driveway of Bragg's home. Williams then tackled Johnson to the ground at the end of the driveway, and Johnson dropped his gun in the middle of the street. Bragg tried to grab the gun, but Johnson reached it first. Johnson ran after Bragg and shot at him as Bragg ran toward his house. Bragg heard two

5

gunshots and felt his arm "go 'dead.'" Johnson got back in the green Honda and drove off.

4.    *Deputy Tanner's supplemental report*

On June 24 Deputy A. Tanner interviewed neighbor Jesus Alvarez. Alvarez saw a Black man exit a vehicle, drop his gun, pick it up, then approach Bragg. The man attempted to fire at Bragg, but the gun did not fire. Bragg attempted to run away. The man then fired approximately three shots at Bragg, ran back to his vehicle, and drove away.

5.    *Deputy Ruiz's supplemental report*

On June 24 Deputy M. Ruiz interviewed two neighbors, Katie and Wendy Klingerkamer. Katie stated she saw a group of people yelling and arguing in Bragg's front yard. She saw a Black male in his mid-20's on the street, pointing a gun toward Bragg's house. The man then fired at least three shots in the direction of Bragg's house. Katie hid below her window, then heard a car speed off. Wendy said she was in the back of her home when she heard at least four gunshots and women screaming.

6.    *Detective Bishop's supplemental report*

On June 24 Detective Bishop interviewed Katie Klingerkamer's sister Haley. Haley heard people arguing outside of her house, and she saw two men fighting in the street. She heard five gunshots and ducked back into her house. She did not see who fired the shots.

6

7. *Detective D. Welle's supplemental reports*

Detective D. Welle interviewed Bragg on June 28. Bragg's statements were consistent with his prior statements to Deputy Castillo. Bragg identified Johnson in a six-pack photographic lineup as the shooter, indicating he was 70 percent sure Johnson was the shooter. Deputy Welle also interviewed Williams, who gave statements consistent with the prior statements he made to Deputy Foster. Williams identified Johnson in a six-pack photographic lineup, stating he was 100 percent sure Johnson was the shooter.

Detective Welle met with Alvarez on June 29. Alvarez identified Johnson in a six-pack photographic lineup as the shooter, stating he was 90 percent sure of his identification.

B. *The Information, Negotiated Plea, and Sentencing*

The information charged Johnson with the attempted willful, deliberate, and premeditated murder of Bragg. (§§ 187, subd. (a), 664.) The information specially alleged the offense was committed for the benefit of, at the direction of, or in association with a criminal street gang within the meaning of section 186.22, subdivision (b)(4). The information also specially alleged Johnson personally used a firearm and personally and intentionally discharged a firearm causing great bodily injury to Bragg within the meaning of section 12022.53, subdivisions (b), (c), and (d).

On February 25, 2012, pursuant to a negotiated disposition, Johnson pleaded no contest to attempted murder. Johnson admitted he personally used a firearm within the meaning of section 12022.5, subdivision (a), and that the offense was committed for the benefit of a criminal street gang pursuant to section 186.22, subdivision (b)(1)(C). In joining in the plea,

7

Johnson's counsel stipulated "to a factual basis as alleged in the police report." The trial court accepted Johnson's plea and sentenced him to an aggregate term of 23 years in state prison, comprised of the upper term of nine years for attempted murder, plus the middle term of four years for the firearm enhancement and 10 years for the gang enhancement.

C.     *Johnson's Petition for Resentencing*

On January 7, 2022 Johnson, representing himself, filed a form petition for resentencing in which he argued he was eligible under section 1170.95 (now section 1172.6) because he pleaded no contest to attempted murder, he could have been convicted at trial under the felony murder doctrine or based on the natural and probable consequences theory, and he could not presently be convicted of attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. On January 12, 2022 the court appointed counsel to represent Johnson.

In their June 8, 2022 response, the People argued Johnson did not qualify for resentencing because the police reports showed "[Johnson] was the sole perpetrator of the attempted murder of Joshua Braggs" and, based on the police reports, "there is no evidence that felony-murder or natural and probable consequences theories of murder were available to the prosecution for the commission of this crime." The People asserted the police reports were part of the record of conviction because the attorneys stipulated the reports provided "the factual bases in the negotiated plea." The People added that Johnson's admission he personally used a firearm in the commission of the attempted murder also showed he was the actual shooter. The People attached the police incident report and eight supplemental

8

police reports as exhibits to the response. Johnson did not file a reply.

At the outset of the June 14, 2022 hearing, the superior court indicated it had read the People's moving papers (Johnson's attorney did not file a brief). Johnson's attorney submitted without presenting an argument. The court denied Johnson's petition, explaining, "The defendant is, in fact, the sole shooter in this matter. And in reviewing the plea colloquy, he does admit to personally using the firearm as noted, and the court doesn't find a prima facie showing has been made."

Johnson timely appealed.

## DISCUSSION

A. *Senate Bill 1437 and Section 1172.6*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848; see *People v. Reyes* (2023) 14 Cal.5th 981, 984.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e). (*Reyes*, at p. 986; *Gentile*, at pp. 842-843.) Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189,

9

subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (the felony-murder special-circumstance provision) (§ 189, subd. (e)(3)). (See *Strong*, at p. 708.) Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, expanded the scope of potential relief by applying Senate Bill No. 1437's ameliorative changes to individuals convicted of attempted murder and voluntary manslaughter. (See § 1172.6, subd. (a).)

Senate Bill 1437 also provided a procedure (now codified in section 1172.6) for an individual convicted of felony murder or murder under the natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (*Lewis, supra*, 11 Cal.5th at p. 959; *People v. Gentile, supra*, 10 Cal.5th at p. 847.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1172.6, subdivision (b)(3). Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing of entitlement to relief. (See

10

§ 1172.6, subd. (c).)  Where a petitioner makes the requisite prima facie showing the petitioner falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c) & (d)(1).)

B.    *The Superior Court Erred in Denying Johnson's Petition Without Issuing an Order To Show Cause*

Johnson contends the superior court erred in relying on the police reports to deny his petition without issuing an order to show cause and holding an evidentiary hearing.  He also argues the court improperly relied on Johnson's admission that he personally used a firearm in the commission of attempted murder to show he was the actual shooter.  The People contend the police reports were part of the record of conviction and show Johnson was the actual shooter and therefore ineligible for relief under section 189, subdivision (e)(1)).  Although we recognize it is unlikely Johnson would be able to rebut a showing by the People that he was the actual shooter in light of the eight individuals who appear to have witnessed Johnson as the lone gunman shooting at Bragg, we agree that Johnson made a prima facie showing of eligibility for relief and is therefore entitled to an evidentiary hearing at which the People will have the burden of proof.

As discussed, where a defendant makes a prima facie showing of eligibility for relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing.  (§ 1172.6, subds. (c) & (d)(1).)  Johnson averred in his

11

petition for resentencing that he pleaded no contest to attempted murder in lieu of going to trial; the People could have proceeded at trial under the felony murder rule or the natural and probable consequences doctrine; and he could not now be convicted of murder or attempted murder under the 2019 amendments to sections 188 and 189. These statements under penalty of perjury establish a prima facie case of eligibility for relief under section 1172.6.

In determining whether the petitioner has made a prima facie showing he or she is entitled to relief under former section 1170.95, subdivision (c), "[l]ike the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis, supra*, 11 Cal.5th at p. 971.)

However, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra*, 11 Cal.5th at p. 972.) Rather, the court's review at this stage is limited to "'readily ascertainable facts'" in the record, such as the jury instructions, the record of the crimes committed, and jury findings on the enhancements. (*People v. Duchine* (2021) 60 Cal.App.5th 798,

815; see *People v. Harden* (2022) 81 Cal.App.5th 45, 50 [considering jury instructions and verdicts to determine whether the record of conviction conclusively established that defendant was actual killer]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 [considering as part of record of conviction the jury instructions, closing arguments, and verdicts, which did not show defendant was ineligible for relief based on jury's true findings on felony-murder special-circumstance allegation].) We independently review whether Johnson has made a prima facie case of eligibility for relief. (*Harden*, at p. 52; see *People v. Flores* (2022) 76 Cal.App.5th 974, 991 (*Flores*) ["it is now well-settled that the prima facie determination is a question of law"].)[3]

The Courts of Appeal are divided as to whether a preliminary hearing or grand jury transcript (like a police report) may be considered as part of the record of conviction where a petitioner admits the transcript provides a factual basis for the

---

[3] The People contend Johnson forfeited his contention the superior court erred in relying on the police reports because his attorney failed to object to consideration of the police reports in the superior court. Because we independently review the record to determine whether Johnson as a matter of law made a prima facie showing of eligibility for relief, we decline to find forfeiture. (*People v. Runyan* (2012) 54 Cal.4th 849, 859, fn 3 [court "may consider new arguments that present pure questions of law on undisputed facts"]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["application of the forfeiture rule is not automatic"].) The People argue that had Johnson objected to consideration of the police reports in the superior court, the People could have identified which of the eight police reports supported their position. But it does not matter whether the People relied on one or eight police reports—the eight reports were consistent but were not part of the record of conviction and included inadmissible hearsay.

13

plea.  (Compare *Flores, supra*, 76 Cal.App.5th at p. 991 [preliminary hearing transcript may not be relied on to establish ineligibility for relief even with stipulation that transcript provided factual basis for plea] and *People v. Rivera* (2021) 62 Cal.App.5th 217, 238 (*Rivera*) [stipulation to grand jury transcript as factual basis for plea did not constitute admission by defendant that he committed murder with malice] with *People v. Patton* (2023) 89 Cal.App.5th 649, 657 (*Patton*), review granted June 28, 2023, S279670 [superior court properly denied petition at prima facie review stage because testimony at preliminary hearing showed defendant was sole perpetrator of attempted murder][4] and *People v. Davenport* (2021) 71 Cal.App.5th 476, 481 [rejecting the argument "the preliminary hearing transcript is never part of the record of conviction" but finding superior court erred in considering facts from the preliminary hearing transcript because the defendant did not stipulate to the facts as a factual basis for his plea]; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1167 [concluding pre-*Lewis* that defendant did not make prima facie showing of eligibility for relief at the prima facie review stage because "the transcripts from the preliminary and plea hearings demonstrate Nguyen was convicted of second degree murder as a direct aider and abettor"].)

We find the reasoning of the First District in *Rivera* and the Fifth District in *Flores* persuasive.  As the court in *Rivera*

---

[4]     The Supreme Court granted review in *People v. Patton*, S279670, to decide whether "the trial court engage[d] in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny defendant's Penal Code section 1172.6 petition at the prima facie stage."

14

observed, "Under section 1192.5, a trial court taking a plea must make 'an inquiry . . . of the defendant to satisfy itself . . . that there is a factual basis for the plea.'  'The factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges.'" (*Rivera, supra*, 62 Cal.App.5th at p. 235, quoting *People v. Holmes* (2004) 32 Cal.4th 432, 441; accord, *Flores, supra*, 76 Cal.App.5th at p. 990.)  Further, "'[a] defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document.  [Citation.]  Thus, absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not 'constitute[] a binding admission for all purposes.'" (*Rivera*, at p. 235; accord, *Flores*, at p. 990; see *People v. Hiller* (2023) 91 Cal.App.5th 335, 349 (*Hiller*) [although defendant stipulated as part of plea that declarations of probable cause established factual basis for plea, the stipulation was not an admission of the truth of the specific statements in the declarations to support a finding prior convictions of out-of-state robberies were serious or violent felonies in California].)  Johnson's admission through his attorney that the police reports provided a factual basis for the plea constituted an admission there was a sufficient factual basis to convict him of attempted murder, but the stipulation was not an admission that all the statements in the police reports describing how the shooting occurred were true.

The People urge us to follow the reasoning of Division Three of this district in *Patton, supra*, 89 Cal.App.5th at page 657, review granted, in which the Court of Appeal affirmed the denial of the defendant's section 1172.6 petition at the prima

15

facie review stage based the preliminary hearing testimony showing the defendant was the sole shooter. (*Id.* at p. 657.) The court explained, "Police officers testified at the preliminary hearing that they had watched the surveillance video and they knew and recognized [the defendant] as the sole perpetrator, who approached [the victim] as he stood at the motel clerk's desk and fired several rounds at him. Those officers were personally involved in the investigation of the shooting of [the victim], and they were subject to cross-examination at the preliminary hearing." (*Ibid.*)

*Patton* is distinguishable in that the court relied on the fact the surveillance video and sworn testimony of the police officers based on the video provided uncontroverted evidence the defendant was the shooter, thereby requiring no judicial factfinding. (*Patton, supra*, 89 Cal.App.5th at p. 658, review granted.) The question before us not whether sworn preliminary hearing testimony may be considered as part of the record of conviction, but rather, whether the fact Johnson stipulated to a factual basis for the plea was an admission that the specific witness statements in the police reports were true. As discussed, in stipulating to a factual basis, Johnson made no such admission.

The People also rely on *People v. Gallardo* (2017) 4 Cal.5th 120, 136 (*Gallardo*) to support their contention the superior court properly considered the witness statements in the police reports. *Gallardo* does not assist them. The Supreme Court in *Gallardo* held the trial court violated the defendant's Sixth Amendment right to a jury trial by finding the defendant's prior conviction of assault was a serious offense (because it was committed with a deadly weapon) for purposes of increasing the sentence for the

current offense.  (*Id*. at pp. 124-125.)  The People point to the language in *Gallardo* that the court's role in considering whether to impose an increased sentence is "limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea."  (*Id*. at p. 136.)  The *Gallardo* court observed the trial court had relied on a transcript from the preliminary hearing at which the victim testified the defendant used a knife during the altercation, but "[n]othing in the record shows that defendant adopted the preliminary hearing testimony as supplying the factual basis for her guilty plea."  (*Ibid*.)  The court therefore remanded the matter to allow the trial court to determine what facts the defendant admitted in entering her plea under the standard set forth in *Gallardo*.  (*Id*. at p. 139.)

The People contend that because Johnson's attorney stipulated that the police reports provided a factual basis for his plea, under *Gallardo*, all the statements in the reports may be considered part of the record of conviction.  We do not read *Gallardo* so broadly.  As the Supreme Court explained in *People v. Holmes, supra*, 32 Cal.4th at page 441, the factual basis for a plea required by section 1192.5 "does not require more than establishing a prima facie factual basis for the charges."  And it was Johnson's attorney, not Johnson, who stipulated the police reports provided a sufficient factual basis.  As the *Hiller*, *Flores*, and *Rivera* courts clarified, the attorney's stipulation to a factual basis does not constitute an admission of the truth of specific facts in the applicable document (here, the police reports).  (See *Hiller, supra*, 91 Cal.App.5th at p. 349; *Flores, supra*,

17

76 Cal.App.5th at p. 990; *Rivera, supra*, 62 Cal.App.5th at p. 235.)

The *Hiller* court rejected a similar argument that *Gallardo* authorized the trial court to consider all the facts set forth in a declaration of probable cause relied on to establish a factual basis for the defendant's plea, to show the defendant's prior conviction was a serious or violent felony.  (*Hiller, supra*, 91 Cal.App.5th at p. 350.)  The court explained, "Even if defendant had admitted to the factual allegations in the probable cause declarations, those allegations do not conclusively establish—although they strongly suggest—his intent to keep the property.  Defendant neither admitted such an intent, nor did a jury find it beyond a reasonable doubt, and we conclude that under *Gallardo*, the sentencing court may not infer such intent in order to impose a sentencing enhancement, no matter how strongly the facts would support such an inference."  (*Ibid*.)  Here, the fact Johnson was involved in the shooting of Bragg—whether as the actual shooter or an accomplice—provided a sufficient factual basis for the trial court to accept the plea to attempted murder under section 1172.5, but the attorney's stipulation does not mean Johnson was admitting the witnesses' description of how the shooting occurred.

Moreover, a police report containing witness statements, such as the reports here, contains inadmissible hearsay.  Under section 1172.6, subsection (d)(3), at an evidentiary hearing on a resentencing petition, "[t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed."

18

Although section 1172.6, subdivision (d)(3), only applies at the evidentiary hearing, it would be incongruous to allow the superior court to rely on hearsay statements at the prima facie review stage to deny a petitioner relief but bar the use of the same evidence at the evidentiary hearing. (See *Flores, supra*, 76 Cal.App.5th at p. 988, fn. 9 ["[W]e fail to see how evidence that cannot establish a petitioner's ultimate eligibility for resentencing could establish a petitioner's ineligibility for resentencing at the prima facie stage."].) As the Supreme Court observed in *Lewis*, in holding judicial factfinding is improper at the prima facie review stage, the "'prima facie bar was intentionally and correctly set very low.'" (*Lewis, supra*, 11 Cal.5th at pp. 971-972.)

The police reports relied upon by the superior court in this case involve two levels of hearsay. The police reports were prepared by Sheriff's deputies and detectives outside the courtroom and were offered for the truth of the statements in the reports. (Evid. Code, § 1200, subd. (a) ["'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."]; *People v. Sanchez* (2016) 63 Cal.4th 665, 674 ["Documents like letters, reports, and memoranda are often hearsay because they are prepared by a person outside the courtroom and are usually offered to prove the truth of the information they contain."].) And significantly, the reports contained out-of-court statements by Bragg and the other witnesses recounting how the shooting took place. "Multiple hearsay may not be admitted unless there is an exception for each level." (*Sanchez*, at p. 675; accord, *Walker v. Superior Court* (2021) 12 Cal.5th 177, 192 ["Each level of out-of-court statement,

19

from the evaluation reports to the probation and police reports to the victim statements, ordinarily must fall under a hearsay exception to be admitted into evidence."].)

The police reports could fall within the official records exception to the hearsay rule upon a showing the Sheriff's deputies and detectives prepared the reports within the scope of their duty as public employees, the reports were made on or near the date of the shooting, and "[t]he sources of information and method and time of preparation were such as to indicate [their] trustworthiness."  (See Evid. Code, § 1280, subd. (c); *Lake v. Reed* (1997) 16 Cal.4th 448, 461; *People v. Hall* (2019) 39 Cal.App.5th 831, 843 ["'Assuming satisfaction of the exception's other requirements, "[t]he trustworthiness requirement . . . is established by a showing that the written [arrest] report is based upon the observations of public employees who have a *duty* [as the arresting deputies had] to observe the facts and report and record them correctly."'"].)  However, no hearsay exception applies to the out-of-court statements made by the eight witnesses in the police reports, nor do the People point to an applicable exception.  Therefore, the statements are inadmissible.

The superior court also erred in relying on Johnson's admission to the allegation of "personally using a firearm" to deny his resentencing petition.  As the Supreme Court explained in *People v. Jones* (2003) 30 Cal.4th 1084, 1119 to 1120, in rejecting the argument the defendant's admission of personal use of a firearm necessarily meant he was the actual killer of a restaurant manager where he and a confederate robbed the restaurant, "The finding of personal use, however, would not in itself prove defendant was the actual killer.  If two robbers display guns to intimidate robbery victims and one shoots and

20

kills a victim, both robbers could be found to have personally used a gun in the robbery and the felony murder, even though only one is the actual killer." Similarly, it is possible that Johnson personally used a firearm in the commission of attempted murder by brandishing the firearm as an accomplice to an assault by the perpetrator, who shot the victim as a natural and probable consequence of the assault.

## DISPOSITION

The order denying Johnson's petition for resentencing is reversed. On remand, the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1172.6, subdivision (d).


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

21